Gordon C. SNYDER, Appellant
(Employee–claimant),

v.

STATE of Wyoming, ex rel., WYOMING
WORKER'S COMPENSATION DI-
VISION, Appellee (Objector).

No. 97–16.

Supreme Court of Wyoming.

April 20, 1998.

G. Mark Garrison of Garrison & Wilmer, Sheridan, for Appellant.

William U. Hill, Attorney General; and Bernard P. Haggerty, Assistant Attorney General, for Appellee.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN and LEHMAN, JJ.

LEHMAN, Justice.

Gordon C. Snyder appeals the hearing examiner's determination denying additional worker's compensation benefits for a shoulder injury and denying two claims for cervical x-rays and treatments ordered by the treating physician. We affirm in part and reverse in part.

## ISSUES

Appellant Gordon C. Snyder, the claimant, states three issues:

1. Whether the Office of Administrative Hearing's Order Granting and Denying Benefits is arbitrary and capricious, and contrary to law where the Hearing Examiner retroactively found previously compensable claims, non-compensable, indicating that the Claimant had not met his burden of proof, after addressing issues not raised by either the Division or the Claimant.

2. Whether the Office of Administrative Hearing's decision was arbitrary and capricious and contrary to law where the Hearing Examiner found that the Claimant had not met his burden of proof as to the initial injury, however, did find that the burden of proof for the Temporary Total Disability benefits awarded for the same injury had been met by the Claimant.

3. Whether the Hearing Examiner's decision was incorrect as a matter of law and not supported by substantial evidence where he ruled that a cervical x-ray and cervical traction therapy ordered by the Claimant's treating physician were not compensable because the Claimant had not met his burden of proof.

Appellee, Worker's Compensation Division (Division), frames the issues as:

A. Whether the hearing examiner's denial of outstanding claims for the Appellant's shoulder impingement was supported by

substantial evidence and in accordance with law.

B. Whether the Appellant forfeited his right to compensation by "flatly refusing" to submit [to] an independent medical examination required by the Division.

C. Whether the hearing examiner's denial of benefits for the Appellant's neck-related claims was supported by substantial evidence and in accordance with law.

### FACTS

On August 14, 1995, Snyder was carrying an air conditioning unit with a co-worker when it started slipping out of its crate, causing him to fall backwards. According to the report of injury completed by Snyder and his employer, Snyder injured his shoulder and back when he fell with the unit. The Division notified Snyder that his injury was compensable and paid Snyder's first five applications for temporary total disability benefits, covering the period of August 14, 1995 through January 31, 1996.

In response to an inquiry from the Division, Snyder's treating physician, Dr. Nickerson, sent a letter to the Division dated February 7, 1996. He stated "I think he's reached a point in his recovery where I have nothing more to offer short of surgery. * * * Without surgery, Mr. Snyder has reached maximum medical improvement. I think his condition would not substantially improve or deteriorate if surgery is not performed." That same date, Dr. Nickerson sent a sixth application for temporary total disability benefits for the period beginning January 31, 1996, indicating that "painful limited ROM" was keeping Snyder from working. Dr. Nickerson did not specify a period ending date for Snyder's temporary total disability, and did not indicate whether Snyder had sustained an ascertainable loss.[1] His attached notes state "I can't certify him as having temporary disability as I feel his situation is stable unless surgical treatment

is undertaken." Dr. Nickerson submitted a seventh application, dated March 7, 1996, certifying Snyder as temporarily disabled for the period of January 31, 1996 to February 28, 1996. He again did not indicate whether Snyder suffered an ascertainable loss.

The Division sought to have Snyder undergo an independent medical evaluation (IME). Two appointments were scheduled with a doctor in Cody and subsequently canceled. On March 12, 1996, the Division sent Snyder a letter asking him to see Dr. Steven Marble in Gillette on April 6, 1996, for an IME and impairment rating. Dr. Marble was asked to give a diagnosis and recommended treatment plan, and to state whether or not Snyder suffered an ascertainable loss.

On March 20, 1996, the Division issued a final determination denying Snyder's seventh temporary total disability application, stating:

The Division has already received an application for temporary total disability for the same period and your health care provider would not certify you. The Division also received two separate correspondence [sic] from your health care provider dated February 7, 1996, stating your condition is stable at this time. Furthermore, you are scheduled for another independent medical evaluation on April 6, 1996, the Division will review this matter again on [sic] the report is reviewed. Wyoming Statute 27–14–404[.]

On April 6, 1996, Snyder arrived for the IME with Dr. Marble fifteen to twenty minutes late because the Division gave him an incorrect address. Snyder was accompanied by a friend, and he tape recorded the session without Dr. Marble's knowledge. Soon after he arrived, Snyder began yelling and using profanities in the presence of the receptionist. The receptionist took him to an examination room; and, within five to ten minutes, Dr. Marble walked in and introduced himself.

---

1. The application form for temporary total disability benefits changed between the time Dr. Nickerson completed the fifth and sixth applications. Question No. 8 on the new application form asks whether the claimant has suffered an ascertainable loss. An ascertainable loss is defined as "that point in time in which it is apparent that permanent physical impairment has resulted from a compensable injury, the extent of the physical impairment due to the injury can be determined and the physical impairment will not substantially improve or deteriorate because of the injury[.]" W.S. 27–14–102(a)(ii). Dr. Nickerson did not check either the "yes" or "no" box.

As Dr. Marble began questioning Snyder about how his injury occurred, Snyder became very upset and again began yelling profanities. Dr. Marble stated Snyder "had the appearance of someone who looks like they are ready to get into a fight." Snyder put on his shirt and left the office.

Dr. Marble reviewed Snyder's medical records, but he was unable to perform a physical examination. Based on his review, Dr. Marble concluded that Snyder likely strained his right biceps and aggravated his calcific tendinitis in his August 14, 1995 on-the-job injury, and that those conditions likely reached maximum therapeutic improvement by January 1996. He was unable to adequately determine whether Snyder was capable of returning to work, but stated his opinion that if Snyder could not return to work it was because of pre-existing degenerative changes in his shoulder, rather than the specific injury in August 1995. He also concluded that no surgery was indicated for injuries sustained in Snyder's accident at work.

The Division issued another final determination on April 16, 1996, based on Dr. Marble's report. The final determination stated:

> The Workers' Compensation Division has reviewed your Independent Medical Evaluation from Western Medical Consultants. The report stated that your aggravation of the biceps tendinitis likely reached maximum therapeutic improvement by January 1996. There was no ascertainable loss or permanent impingement as a result of this lifting injury. Also no surgery is indicated for the specific injuries sustained from the work related injury.

The Division sent Snyder a letter offering to schedule another evaluation by Dr. Marble, and warned Snyder that "[i]ntentional uncooperativeness by you in this process can prejudice you later in the case and sometimes can lead to a denial of benefits." Snyder refused to see Dr. Marble again. He objected to the March 20 and April 16 final determinations and requested a hearing.

In the meantime, the Division had issued a final determination on December 12, 1995, denying a $128.40 medical bill for cervical x-rays and a portion of an office visit related to cervical complaints. The Division also denied a $248.00 medical bill for cervical traction on January 11, 1996. Both final determinations stated that the neck-related treatments were unrelated to Snyder's work-related injury to his shoulder and back. Snyder also requested hearings on those final determinations.

A contested case hearing was held on September 23, 1996. The hearing examiner found that Snyder failed to prove the cervical treatments were related to his work-related injury and denied payment of the two bills for $128.40 and $248.00. The hearing examiner granted Snyder's seventh application for temporary total disability benefits, based on Dr. Nickerson's certification. Finally, the hearing examiner determined that Snyder did not prove by a preponderance of the evidence that his current shoulder impingement problem was causally related to his accident at work and, thus, denied further benefits for shoulder-related claims. Snyder sought review in the district court, which certified the case to this court pursuant to W.R.A.P. 12.09(b).

## STANDARD OF REVIEW

W.R.A.P. 12.09 provides for judicial review of agency action according to W.S. 16–3–114(c), which states:

> The reviewing court shall:
>
> * * *
>
> (ii) Hold unlawful and set aside agency action, findings and conclusions found to be:
>
> (A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;
>
> * * *
>
> (E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

W.S. 16–3–114(c) (1997). An agency's factual findings are viewed with deference:

> We examine the entire record to determine if there is substantial evidence to support an agency's findings. If the agency's decision is supported by substantial evidence, we cannot properly substitute our judg-

ment for that of the agency, and must uphold the findings on appeal. Substantial evidence is relevant evidence which a reasonable person might accept in support of the conclusions of the agency. It is more than a scintilla of evidence. *Aanenson v. State ex rel. Worker's Compensation Div.*, 842 P.2d 1077, 1079 (Wyo.1992) (citations omitted). An agency's conclusions of law will be affirmed only if they are in accordance with law. *Id.*

## DISCUSSION

Snyder argues that, because neither the Division nor the employer objected to the initial injury and because the Division failed to file a petition pursuant to W.S. 27–14–605(a), the doctrine of collateral estoppel precluded the hearing examiner from considering the compensability of the injury. He also contends that the hearing examiner erred by assigning Snyder the burden of proving the compensability of his shoulder injury.

■■■ The determination of a claimant's rights is guided by the statutes in effect at the time the injury occurred, in this case, August 1995. *Tenorio v. State ex rel. Workers' Compensation Div.*, 931 P.2d 234, 237 (Wyo.1997). Wyoming Statute 27–14–404(d)(ii) (Supp.1995) provides that temporary total disability benefits shall not be paid if "[a] claim is filed without the signature of the claimant and certification by the attending health care provider." *See also Higgins v. State ex rel. Worker's Compensation Div.*, 739 P.2d 129, 133 (Wyo.1987) ("If a physician does not certify that a workman is totally disabled or when it is indicated that he has reached the point of stability or recovery, temporary total disability benefits must cease."). The Division's final determination dated March 20, 1996, denied payment of temporary total disability benefits for the month of February 1996 because Dr. Nickerson did not certify Snyder for that period on the original application. Dr. Nickerson's correspondence to the Division stated he could not certify Snyder as temporarily disabled because his condition was stable at that time, although Dr. Nickerson later submitted a second application which included his certification. Under these circumstances, it was not improper for the Division to deny Snyder's temporary total disability benefits for February based on subsection (d)(ii).

The April 16, 1996 final determination indicated that, according to the independent medical evaluation, Snyder had reached maximum therapeutic improvement by January 1996 and suffered no ascertainable loss or permanent impairment due to the work-related injury. Wyoming Statute 27–14–404(c) requires payment of temporary total disability benefits to cease when:

(i) Recovery is complete to the extent that the earning power of the employee at a gainful occupation for which he is reasonably suited by experience or training is substantially restored; or

(ii) The employee has an ascertainable loss and qualifies for benefits under W.S. 27–14–405 or 27–14–406.

Based on Dr. Marble's evaluation, the Division properly proceeded according to subsection 404(c)(i).

Both final determinations flowed from statutory requirements set out in section 404. The Division did not claim, nor did the hearing examiner find, that Snyder's initial injury was not compensable or that worker's compensation benefits were awarded by mistake. Nor did the Division seek repayment of previously paid benefits. Therefore, Snyder's case did not need to be "reopened" pursuant to W.S. 27–14–605. *See Tenorio*, 931 P.2d at 237–38.

■■■ A claimant is not guaranteed future benefits on the basis of a prior award. *Id.* Further, it is not the burden of the employer or the Division to prove that a claimant is *not* entitled to a continuation of temporary total disability benefits. *Higgins*, 739 P.2d at 131. Rather, the claimant has the burden of showing that he is entitled to a continuance of benefits. *Id.* With respect to outstanding claims for worker's compensation benefits, the claimant bears the burden of proving all essential elements of his claim by a preponderance of the evidence. *Tenorio*, 931 P.2d at 239–40. The April 16 final determination notified Snyder that causation of his current shoulder impingement was at issue. It was Snyder's burden, then, to prove that his con-

tinuing shoulder problems were caused by his work-related injury and not by his pre-existing conditions. *See* W.S. 27–14–102(a)(xi)(F) (Supp.1995) (" 'Injury' does not include * * * [a]ny injury or condition preexisting at the time of employment with the employer against whom a claim is made.").

■ The record contains substantial evidence to support the hearing examiner's decision that Snyder did not meet this burden. Dr. Nickerson struggled to diagnose Snyder's shoulder injury. Initially, he believed Snyder had strained his rotator cuff muscles and tendons or had a small disc herniation. He then came to believe Snyder might have a large rotator cuff tear. When an MRI showed no tears in the rotator cuff muscle or tendon, Dr. Nickerson determined that Snyder had strained the rotator cuff tendon in his right shoulder and was having trouble sliding the strained tendon through the tight space between the top of the humerus and the bottom of the shoulder blade. This diagnosis, a condition also known as shoulder impingement, was confirmed by Dr. Marble, as well as Dr. Nickerson's partner, Dr. Ferries, who reviewed Snyder's MRI results and saw him on one office visit.

Although the medical experts agreed upon the diagnosis, the evidence conflicts with regard to whether Snyder's current complaints resulted from his work injury or from pre-existing conditions. Dr. Nickerson's opinion is that Snyder's current complaints are related to the accident at work. His opinion is based on Snyder's previous ability to perform his work and his report that his shoulder did not bother him prior to the injury. However, the physical therapist's notes state that Snyder reported to her he had had problems with his shoulder for quite some time, and shoulder x-rays indicated calcium deposits in the shoulder which can appear around a tendon that is chronically inflamed. Dr. Ferries opined that the impingement is "secondary to overuse from protecting his left shoulder" which had previously been operated on. Dr. Marble testified that shoulder impingement syndrome does not occur as the result of a single incident or accident, but instead is the result of overuse over a long period of time. Based on his review of Snyder's medical records, it was his opinion that Snyder's current problems resulted from his long-standing, pre-existing problems and not his August 1995 accident.

■ This case presented difficult questions because it involved an acute injury incurred on the job, combined with significant, widespread pre-existing conditions. The hearing examiner, as the trier of fact, is responsible for sorting through and weighing the differences in evidence and testimony, including that obtained from medical experts.[2] *Fansler v. Unicover Corp.*, 914 P.2d 156, 159 (Wyo.1996). This court will not reweigh the evidence, nor will we substitute our judgment for the hearing examiner's in that regard. The record contains relevant evidence which a reasonable person might accept in support of the hearing examiner's decision; and, therefore, we uphold the decision on appeal.

Because we affirm the hearing examiner's determination that Snyder's current injury is non-compensable, we need not address the Division's argument that Snyder's actions with regard to the IME justified forfeiture of his benefits.

We turn our attention, then, to the two disputed medical bills, one for cervical x-rays and exam, and the other for cervical traction therapy. The hearing examiner concluded that "[t]he claimant has failed to produce credible medical testimony, other testimony or evidence which proves that the cervical treatments for which he now requests benefit payments were received as a result of his work-related injury." Snyder contends that these measures were medically necessary and ancillary to his on-the-job injury and, therefore, compensable.

Dr. Nickerson testified by deposition that Snyder visited him on August 24, 1995, complaining of right shoulder and back pain.

---

2. We note that in W.S. 27–14–616(e) (1997) the legislature has provided a means for parties to have difficult medically contested issues such as these resolved by a panel of the medical commission, which is comprised of health care providers with the professional expertise to make an informed decision.

Over time, Snyder's back improved, and eventually the back problems related to the fall completely resolved, but he continued to experience problems with his right shoulder. Dr. Nickerson stated that, on October 23, 1995, Snyder complained not only of right shoulder pain, but also of tingling in his hands. Dr. Nickerson's notes reflect that Snyder reported the tingling began when his shoulder was retracted during physical therapy. The tingling alerted Dr. Nickerson that a neck problem may have been the source of Snyder's difficulties, including the shoulder pain. Consequently, he ordered neck x-rays because he believed x-rays were appropriate to investigate Snyder's symptoms. The x-rays indicated significant pre-existing degenerative disc disease throughout Snyder's mid and lower cervical spine, and Dr. Nickerson noted he believed Snyder suffered from "some thoracic outlet type of syndrome which is aggravated by degenerative disc disease." Dr. Nickerson then ordered cervical traction for treatment of the neck problems which he felt were connected to Snyder's shoulder complaints. Dr. Nickerson testified, however, that the x-rays did not disclose any aggravation or strain of Snyder's cervical spine that could be linked directly to his August 1995 injury.

■ This evidence supports the hearing examiner's determination that Snyder did not prove by a preponderance of the evidence that the cervical *treatments* were related to his on-the-job injury. Snyder points to *Forni v. Pathfinder Mines*, 834 P.2d 688 (Wyo. 1992), for the proposition that ancillary treatments which are deemed requisite to the ultimate course of treatment are compensable. In *Forni*, we applied a "rule of reason" to determine that treatments for the claimant's pre-existing depression and diabetes were ancillary and necessary to prepare the claimant for surgery for a work-related injury and, therefore, compensable. 834 P.2d at 694. Here, Snyder presented no evidence to suggest that the treatments were necessary as a precursor to surgery. Although Dr. Nickerson felt the neck complaints were related to the shoulder complaints, he did not state that the treatments were necessary for proper attention to the work-related occurrence. *See id.* Rather, he testified that the

x-rays did not reveal a neck injury that could be linked to Snyder's on-the-job accident. The record contains substantial evidence to support the hearing examiner's denial of the $248.00 bill for cervical traction treatments.

■ We reach a different conclusion with regard to the cervical x-rays and exam; Dr. Nickerson's testimony does not amount to substantial evidence on which a reasonable person could conclude the cervical x-rays and exam were not related to Snyder's work injury. Dr. Nickerson was treating Snyder for on-going shoulder pain due to his work injury. When Snyder complained of tingling in his hands, which he related to "things that were done to help the shoulder," Dr. Nickerson felt that neck problems could be the source of the tingling, as well as Snyder's continuing shoulder problems. He ordered cervical x-rays to investigate Snyder's symptoms. No evidence was presented to undermine or contradict this course of action. Dr. Nickerson determined that Snyder suffered from pre-existing degenerative conditions in his cervical spine *after* reviewing the cervical x-rays. An appropriate diagnostic measure is not non-compensable merely because it fails to reveal an injury which is causally connected to an on-the-job injury. Therefore, the hearing examiner's denial of the bill for $128.40 covering cervical x-rays and exam is reversed.

### CONCLUSION

We reverse the hearing examiner's denial of benefits for cervical x-rays and exam. In all other respects, the Order Granting and Denying Benefits is affirmed.