2011 WY 160

**In the Matter of the Worker's Compensation Claim of Valerie D. PRICE, Appellant (Petitioner),**

v.

**STATE of Wyoming, ex rel., WYOMING WORKERS' SAFETY AND COMPENSATION DIVISION, Appellee (Respondent).**

No. S–11–0117.

Supreme Court of Wyoming.

Dec. 8, 2011.

Representing Appellant: Sky D Phifer, Phifer Law Office, Lander, Wyoming.

Representing Appellee: Gregory A. Phillips, Wyoming Attorney General; John D. Rossetti, Deputy Attorney General; James M. Causey, Senior Assistant Attorney General.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

VOIGT, Justice.

[¶ 1] The Office of Administrative Hearings (OAH) upheld the decision of the Wyoming Worker's Safety and Compensation Division (Division) denying the appellant, Valerie Price, reimbursement of medical expenses for an injury suffered following a work-related accident on the basis that the subsequent injury was not work related. This Court upholds that determination.

### ISSUE

[¶ 2] Does substantial evidence support the hearing examiner's decision upholding the Division's denial of payment for medical services relating to the appellant's cervical spine?

### FACTS

[¶ 3] The appellant slipped and fell on December 25, 2004, while taking out garbage for her employer. She was diagnosed with injuries to her right hip, shoulder, and elbow and received Wyoming workers' compensation benefits for her shoulder injury and an umbilical hernia. Throughout the beginning of 2005, the appellant was treated by Dr. John Harp at the Lander Medical Clinic. Dr. Harp ordered x-rays but no bone injury was apparent. He also prescribed a course of physical therapy to strengthen the appellant's arm and improve her range of motion. In February 2005, Dr. Harp ordered an MRI of the appellant's right shoulder which showed a clavicle fracture, although the doctor noted that the MRI did not reveal injury commensurate with the appellant's complaints. Because the appellant continued to experience pain in her shoulder after three months of physical therapy, Dr. Harp scheduled the appellant for surgery to repair her clavicle. Dr. Harp also noted that there was a risk that the shoulder would not improve following surgery. After the surgery, the appellant was again placed on a course of physical therapy. The doctor noted that the appellant was "slowly, but surely improving" and he expected her to make "a full recovery without permanent impairment." In May 2005, Dr. Harp allowed the appellant to return to work without restriction. After a follow-up visit in August of 2005, another doctor at the Lander clinic indicated that although the appellant was still experiencing pain in her shoulder, he was "unsure how this relates to her initial injury." Dr. Harp referred the appellant to Dr. Bienz at Gem City Bone and Joint.

[¶ 4] Dr. Bienz saw the appellant in September 2005, and was unable to determine the source of her continuing shoulder pain and, again, the appellant was prescribed a course of physical therapy. After five weeks, the appellant reported to Dr. Bienz that her shoulder pain had not diminished. The doctor's notes indicate that "her pain seems well out of proportion to [his] objective findings." Dr. Bienz scheduled the appellant for an MRI, the results of which were normal and indicated no sign of injury to the appellant's shoulder. Once again the appellant was prescribed physical therapy, but the doctor suggested that success would not be likely. Four weeks later, in December of 2005, Dr. Bienz's notes show an increased range of motion in the appellant's shoulder, despite continuing numbness and burning sensations in her fingers. These symptoms, he suggested, are likely a result of the shoulder manipulation performed during the appellant's physical therapy sessions.

[¶ 5] Following a referral, Dr. Behrens examined the appellant on February 7, 2006, and ordered an MRI of the patient's cervical spine. The findings of the radiologist were as follows:

> The cervical vertebral bodies show slight loss of the normal cervical lordotic curvature. This is most pronounced at the C4–5 level. The cerebellar tonsils are normotopic in position. The cervical cord is of

normal caliber and shows normal signal intensity. There is no evidence of spinal canal stenosis. The cervical discs show normal hydration. There is minor bulging of the annulus at the C5–6 level. This does not result in any canal or foraminal stenosis however. No additional abnormalities are note [sic].

Dr. Behrens, however, never reviewed the results of the MRI after the Division refused to pay for his services.

[¶ 6] The appellant was sent to Dr. Ruttle in March 2006 for an independent medical examination. The doctor concluded that the appellant exhibited no evidence of cervical spine injury following an examination. The appellant was also sent to Dr. Ford who, following a review of the 2006 MRI of the appellant's cervical spine, determined that the results showed "some loss of cervical lordosis and a mild C5–6 disk bulge not causing any nerve root impingement and probably not clinically important considering her age."

[¶ 7] In 2009, the appellant was referred to Dr. Jenkins who ordered a second MRI [1] of her cervical spine. The results of the MRI suggested that the appellant was suffering from mild cervical spondylosis, mild foraminal stenosis of the C3–4 disc, and a paracentral bulge of C5–6. The doctor indicated that the bulge in the C5–6 disc should not be giving her the pain she experienced in her right shoulder. In a letter to the Division, Dr. Jenkins suggested that the impingement of the C3–4 disc could affect a nerve leading to the trapezius muscle. He added that "it is just difficult to tell at this time whether any significant pain is coming from her neck. We do know that an EMG was done on [sic] 2006 showed no evidence of cervical radiculopathy." Under Dr. Jenkins' care, the appellant continued with physical therapy and the doctor noted improvement in her range of motion and a decrease in pain in her arms. The doctor later suggested that "[t]he fact that her shoulder workup is now completely negative and she continues to have pain certainly suggests that the pain may be coming from another source and the most logical source is her cervical spine."

1. It is the cost of this 2009 MRI that is disputed

[¶ 8] The Division issued four Final Determinations objecting to the payments amounting to $2,097.00 for x-rays and an MRI of the appellant's cervical spine on the grounds that injuries to the cervical spine were not the result of a work-related injury. After the appellant requested a hearing, the OAH denied coverage for these tests, finding that the appellant had not met her burden of establishing that, although the condition of her cervical spine may now be causing shoulder pain, any damage to the cervical spine was not a result of her slip and fall. Following an appeal, the district court affirmed the findings of the OAH. The appellant now appeals to this Court.

**STANDARD OF REVIEW**

[¶ 9] The substantial evidence standard will be applied when this Court reviews evidentiary issues. *Dale v. S & S Builders*, 2008 WY 84, ¶ 25, 188 P.3d 554, 561 (Wyo.2008). "Substantial evidence is relevant evidence which a reasonable mind might accept in support of the agency's conclusions. It is more than a scintilla of evidence." *Id.* at ¶ 11, 188 P.3d at 558 (internal citations and quotations omitted). Such a review requires that we determine whether there was substantial evidence to support the agency's findings. *Id.*

> If the hearing examiner determines that the burdened party failed to meet his burden of proof, we will decide whether there is substantial evidence to support the agency's decision to reject the evidence offered by the burdened party by considering whether that conclusion was contrary to the overwhelming weight of the evidence in the record as a whole.

*Id.* at ¶ 22, 188 P.3d at 561. "This Court will not re-weigh the evidence nor substitute its judgment for that of the Hearing Examiner." *Thomas v. Star Aggregates, Inc.*, 982 P.2d 714, 716 (Wyo.1999), citing *Snyder v. State ex rel. Wyo. Worker's Comp. Div.*, 957 P.2d 289, 292–93 (Wyo.1998).

**DISCUSSION**

[¶ 10] The appellant must establish by a preponderance of the evidence that

by the appellant.

she is entitled to receive workers' compensation benefits. *Snyder*, 957 P.2d at 293. For the appellant to meet that burden here, she must show not only that her shoulder pain resulted from an injury to her cervical spine, but also that such injury to her spine resulted from the December 25, 2004, accident. Wyo. Stat. Ann. § 27–14–102(a)(xi) (LexisNexis 2011) (A compensable injury must "aris[e] out of and in the course of employment."). For the injury to have occurred "in the course of employment," there must be "a nexus between the injury and some condition, activity, environment or requirement of the employment. Existence of such a nexus depends upon a reasonable relationship between the project being performed and the claimant's job." *State ex rel. Wyo. Workers' Comp. Div. v. Espinoza*, 924 P.2d 979, 981 (Wyo.1996) (internal citations and quotations omitted). As stated above, the determination of the OAH will be upheld provided that substantial evidence supports the decision. *See supra* ¶ 9.

[¶ 11] The appellant argues that since her shoulder pain has yet to subside, she is entitled to reimbursement for diagnostic measures that may determine the source of her affliction. In making this argument the appellant relies upon *Snyder v. State ex rel. Wyo. Worker's Comp. Div.*, 957 P.2d 289 (Wyo.1998). In *Snyder*, the appellant fell at work which resulted in an injury to his back and pain in his shoulder. After the back injury resolved, the appellant still experienced pain and tingling in his right shoulder and arm, and x-rays were ordered to determine the source of his symptoms. *Id.* at 294–95. This Court reversed the hearing examiner's denial of reimbursement for the cost of those x-rays, holding that "[a]n appropriate diagnostic measure is not non-compensable merely because it fails to reveal an injury which is causally connected to an on-the-job injury." *Id.* at 295. This decision was partly based on the fact that "[n]o evidence was presented to undermine or contradict this course of action." *Id.*

[¶ 12] *Snyder* is distinguishable from this case. While we acknowledge that procedures to rule out the source of an injury are not necessarily non-compensable simply because the test may show that the injury is not in fact related to a workplace accident, we cannot extend that logic to say that all diagnostic tests ought to be compensable. Reimbursement is disputed with regard to the 2009 MRI of the appellant's cervical spine. Dr. Jenkins ordered this exam to determine whether the appellant's shoulder pain and arm numbness were derived from some damage to her cervical spine. The *Snyder* court, in ruling for the patient, relied upon the fact that the diagnostic examination at issue had not been "undermined" by other evidence. That is not the case here. Although the 2006 MRI had not been reviewed by any of the appellant's physicians, the radiologist's report as well as Dr. Ford's analysis of the MRI could reasonably have been interpreted by the Hearing Examiner to indicate nothing more than mild degeneration of the appellant's cervical spine with no suggestion that any minor abnormalities were the result of recent trauma rather than age related wear and tear. Additionally, a subsequent MRI of the cervical spine would not have been necessary to determine whether the appellant's shoulder pain was the result of some damage to her cervical spine, and, if such damage existed, whether or not it was caused by the appellant's slip and fall. The 2006 MRI was still available for review by Dr. Jenkins. If the cervical spine had been injured in the appellant's late 2004 slip and fall, it certainly was reasonable to assume that indication of such damage would have appeared on the 2006 MRI, and that any future MRIs of the appellant's cervical spine would not have shown evidence of a work-related injury that was not apparent in the earlier MRI, regardless of whether the cervical spine appeared to be damaged.

[¶ 13] The appellant also argues that the Hearing Examiner's reliance on the evaluations by Dr. Ruttle and Dr. Ford was misplaced. The appellant indicates that Dr. Ruttle did not have access to the 2006 or 2009 MRIs, the records of chiropractor Dr. Park showing improvement to the appellant's shoulder following cervical manipulation, the records of the appellant's 2009 physical therapist showing improvement following neck physical therapy, or Dr. Jenkins' records suggesting that the appellant's pain may be

the result of impingement of the C4 nerve. The appellant claims that "Dr. Ford does not support the position of the Hearing Examiner" because Dr. Ford only noted that the appellant benefited from massage therapy and manipulation. While the appellant is correct that the reports from the independent medical examinations of Dr. Ruttle and Dr. Ford do not conclusively establish that the appellant's injuries were not related to her cervical spine, these reports also do not show the contrary—that the appellant's arm pain is derived from her cervical spine, which was injured in her fall at work. In addition, Dr. Ford did, in fact, review the 2006 MRI and his conclusions are more revealing than the appellant suggests. *See supra* ¶ 6.

[¶ 14] The appellant emphasizes the fact that she has felt pain in her shoulder since her injury in December 2004. It is clear from the record that the appellant fractured her clavicle and underwent surgery to repair her shoulder. There is sufficient evidence in the record, however, to support the conclusion of the Hearing Examiner that the appellant did not meet her burden of proving the necessary connection between the work-related injury to the appellant's hip, shoulder, and elbow and subsequent diagnostic treatment of her cervical spine.

## CONCLUSION

[¶ 15] To meet her burden of proof, the appellant needed to produce substantial evidence not just that her shoulder pain is emanating from her cervical spine, but also that any damage to her cervical spine is a direct result of her slip and fall. While it is true that the appellant has been experiencing pain in her shoulder area since shortly after her slip and fall, the record contains substantial evidence showing that this pain was not necessarily related to the accident. Although a number of physicians suggested that perhaps the pain was emanating from the cervical spine, nerve tests, x-rays, and an MRI did not establish this and, more importantly, such examinations did not show, nor did any doctor suggest, that any imperfections in the appellant's cervical spine were caused by her fall. It was reasonable for the Hearing Examiner to conclude, based upon

substantial evidence in the record, that the appellant did not meet her burden of establishing that her shoulder pain was the result of her workplace slip and fall, and therefore we affirm.