# IN THE SUPREME COURT, STATE OF WYOMING

# 2022 WY 81

APRIL TERM, A.D. 2022

June 27, 2022

ANTHONY HART,

Appellant
(Petitioner),

v.

STATE OF WYOMING, ex rel.
DEPARTMENT OF WORKFORCE
SERVICES, WORKERS'
COMPENSATION DIVISION,

Appellee
(Respondent).

S-21-0256

*Appeal from the District Court of Campbell County*
The Honorable Stuart S. Healy III, Judge

*Representing Appellant:*
>    Corrie Lynn Lamb, Barney & Graham, LLC, Gillette, Wyoming.

*Representing Appellee:*
>    Bridget Hill, Wyoming Attorney General; Mark Klaassen, Deputy Attorney General; Peter F. Howard, Senior Assistant Attorney General; Holli J. Welch, Senior Assistant Attorney General.

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KAUTZ, Justice.**

[¶1]    After a contested case hearing, the Wyoming Medical Commission (Medical Commission) upheld the Wyoming Workers' Safety and Compensation Division's (Division) denial of coverage for Anthony Hart's thoracic spine treatment, and the district court affirmed. Mr. Hart claims the Medical Commission's decision was not supported by the hearing evidence. We affirm.

## ISSUES

[¶2]    The issues on appeal are:

1. Was the Medical Commission's decision that Mr. Hart did not prove his thoracic spine injury was caused by his work-related accident supported by substantial evidence?

2. Was the Medical Commission's decision that treatment for Mr. Hart's thoracic spine injury was not compensable under the "rule out doctrine" supported by substantial evidence?

## FACTS

[¶3]    Mr. Hart was employed by Peabody Powder River Services, LLC as a production technician at the North Antelope Rochelle coal mine near Wright. On September 17, 2017, he was driving a haul truck which, when fully loaded, weighed 350 tons. The roads at the mine were very rough, causing Mr. Hart to bounce "vigorous[ly]" as he drove. The truck seat was equipped with an air shock; however, the shock was "shot" and did not work properly. Mr. Hart injured his back when the seat "bottomed out" after hitting a bump.

[¶4]    Mr. Hart filed a report of injury with the Division, stating he had injured his "back." He identified the location of his back injury as "L1," referring to the vertebrae at the top of the lumbar spine (low back). Mr. Hart sought medical treatment for "low back" pain on September 18, 2017. After examining Mr. Hart and reviewing x-rays, a physician assistant concluded Mr. Hart had a "lumbar strain" and recommended treatment with pain medication, a muscle relaxer, a home exercise program, and physical therapy. The Division issued a final determination which approved worker's compensation benefits for treatment of an injury to Mr. Hart's lumbar spine.

[¶5]    Mr. Hart's lumbar spine injury initially improved, but in November 2017, his low back pain worsened and he ceased working. An MRI of his lumbar spine showed some mild abnormalities at the L5-S1 level, which is low on the lumbar spine, but "[e]very level above L5 in the lumber spine [was] normal." Mr. Hart remained off work and continued to be treated for his lumbar spine injury over the next several months, including by

1

interventional pain management specialist Todd Hammond, M.D. In early April 2018, Mr. Hart was released to "full duty" work after he passed a "work status test" which measured his ability to perform all physical requirements necessary to return to work at his job. While Mr. Hart was being treated for his work-related lumbar spine injury from Fall 2017 through Spring 2018, the medical records do not contain any reports of pain in his thoracic spine (mid-back).

[¶6]    A June 4, 2018, medical record from Dr. Hammond contains the first post-accident mention of Mr. Hart experiencing thoracic spine pain.[1] Dr. Hammond treated Mr. Hart's thoracic spine injury with thoracic facet injections, a medial branch block, and eventually rhizotomy (cauterization) of the sensory nerves at the T10 through T12 vertebrae levels, which are "at the junction where the thoracic spine . . . turns into the lumbar spine." Mr. Hart's thoracic spine injury improved after the rhizotomy.

[¶7]    The Division issued a final determination denying Mr. Hart worker's compensation coverage for his thoracic spine treatment because it was not "reasonable and necessary medical care to the 9/17/2017 worker's compensation injury to the lumbar spine." Mr. Hart objected to the final determination, stating "most of back was hurting[;] I fixed what hurt the most first." The Division referred Mr. Hart's case to the Medical Commission.

[¶8]    After a contested case hearing, the Medical Commission upheld the Division's denial of coverage for Mr. Hart's thoracic spine injury. It concluded Mr. Hart had not proven 1) a causal relationship between "the treatment [he] received for injury to the thoracic spine" and the "approved workplace injury to the lower back" which occurred nine months earlier, or 2) the thoracic spine treatment was "compensable pursuant to the 'rule out' doctrine." The Medical Commission noted there was no mention in his medical records of any thoracic spine pain until June 4, 2018, and Dr. Hammond, Mr. Hart's treating physician and expert medical witness, could not say to a reasonable degree of medical probability that the thoracic spine injury originated from the September 2017 work-related accident. Mr. Hart filed a petition for judicial review of the Medical Commission's decision, and the district court affirmed. He appealed to this Court.

---

[1] Evidence was presented to the Medical Commission at the contested case hearing that Mr. Hart had received treatment to his thoracic spine in 2014 and 2015. Mr. Hart did not present any evidence or argument at the hearing that he was entitled to benefits for treatment of a material aggravation of a pre-existing injury to his thoracic spine, so we will not consider the matter. *See generally, Hayes v. State ex rel. Wyo. Workers' Safety & Comp. Div.,* 2013 WY 96, ¶ 14, 307 P.3d 843, 847 (Wyo. 2013) ("an employee may [be awarded worker's compensation benefits] if his employment aggravated, accelerated, or combined with [a preexisting] disease or infirmity to produce the condition for which compensation is sought" (citation and some quotation marks omitted)); *In re Boyce,* 2005 WY 9, ¶ 11, 105 P.3d 451, 455 (Wyo. 2005) (an employee may receive worker's compensation benefits if he presents evidence showing "the work contributed to a material degree to the aggravation of the preexisting condition").

**STANDARD OF REVIEW**

[¶9]   When an appeal is taken from a district court's decision on review of an administrative agency's ruling, we examine the case as if it came directly from the agency, giving no special deference to the court's decision. *In re Vinson,* 2020 WY 126, ¶ 25, 473 P.3d 299, 308 (Wyo. 2020); *Guerrero v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div.,* 2015 WY 88, ¶ 11, 352 P.3d 262, 265 (Wyo. 2015) (citing *Dale v. S & S Builders, LLC,* 2008 WY 84, ¶ 8, 188 P.3d 554, 557 (Wyo. 2008)) (other citations omitted). Wyo. Stat. Ann. § 16-3-114 (LexisNexis 2021) governs judicial review of administrative decisions:

> (c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:
> (i) Compel agency action unlawfully withheld or unreasonably delayed; and
> (ii) Hold unlawful and set aside agency action, findings and conclusions found to be:
> (A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;
> (B) Contrary to constitutional right, power, privilege or immunity;
> (C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;
> (D) Without observance of procedure required by law; or
> (E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

[¶10]  In accordance with § 16-3-114(c)(ii)(E), we review an agency's findings of fact by applying the substantial evidence standard. *Vinson,* ¶ 26, 473 P.3d at 308. *See also, Camacho v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div.,* 2019 WY 92, ¶ 23, 448 P.3d 834, 843 (Wyo. 2019) ("'[T]he substantial evidence test is the appropriate standard of review in appeals from [Wyoming Administrative Procedure Act] contested case proceedings when factual findings are involved and both parties submit evidence.'" (quoting *Dale*, ¶ 10, 188 P.3d at 558)).

"In reviewing findings of fact, we examine the entire record to determine whether there is substantial evidence to support an agency's findings. If the agency's decision is supported by substantial evidence, we cannot properly substitute our judgment for that of the agency and must uphold the findings on appeal. Substantial evidence is relevant evidence which a reasonable mind might accept in support of the agency's conclusions."

*Id.* (quoting *Dale,* ¶ 11, 188 P.3d at 558) (other citations omitted). *See also, Kenyon v. State ex rel. Wyo. Workers' Safety & Comp. Div.,* 2011 WY 14, ¶ 11, 247 P.3d 845, 849 (Wyo. 2011) ("Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" (quoting *Bush v. State ex rel. Wyo. Workers' Comp. Div.,* 2005 WY 120, ¶ 5, 120 P.3d 176, 179 (Wyo. 2005)) (other citations omitted)).

[¶11]   When the Medical Commission determines "the burdened party failed to meet his burden of proof, [the reviewing court] will decide whether there is substantial evidence to support the agency's decision to reject the evidence offered by the burdened party by considering whether that conclusion was contrary to the overwhelming weight of the evidence in the record as a whole." *Mitcheson v. State ex rel. Wyo. Workers' Safety & Comp. Div.,* 2012 WY 74, ¶ 9, 277 P.3d 725, 730 (Wyo. 2012) (citing *Dale,* ¶ 22, 188 P.3d at 561). *See also, Boyce v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div.,* 2017 WY 99, ¶ 21, 402 P.3d 393, 399-40 (Wyo. 2017) (when an administrative agency concludes a worker's compensation claimant fails to meet his burden of proof, we decide whether, upon review of the entire record, there is substantial evidence to support the agency's decision).

[¶12]   Under § 16-3-114(c)(ii)(A), a court may set aside an agency decision found to be "[a]rbitrary, capricious, an abuse of discretion or otherwise not in accordance with law[.]" We do not use the arbitrary and capricious standard to review the sufficiency of the evidence to support an agency's decision following a contested case hearing. *Dale,* ¶ 22, 188 P.3d at 561. Rather, the standard acts as a "'safety net to catch agency action which prejudices a party's substantial rights or which may be contrary to the other [Wyoming Administrative Procedure Act] review standards yet is not easily categorized or fit to any one particular standard.'" *Dale,* ¶ 23, 188 P.3d at 561 (quoting *Newman v. State ex rel. Wyo. Workers' Safety & Comp. Div.,* 2002 WY 91, ¶ 23, 49 P.3d 163, 172 (Wyo. 2002)) (some quotation marks omitted). "'We review an agency's conclusions of law *de novo*[] and will affirm only if the agency's conclusions are in accordance with the law.'" *Middlemass v. State ex rel. Wyo. Workers' Safety & Comp. Div.,* 2011 WY 118, ¶ 13, 259 P.3d 1161, 1164 (Wyo. 2011) (quoting *Kenyon,* ¶ 13, 247 P.3d at 849) (other citations omitted).

4

## DISCUSSION

### *Causation*

[¶13] A claimant has the "burden of proving all of the elements" of his claim for worker's compensation benefits "by a preponderance of the evidence." *Trump v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2013 WY 140, ¶ 21, 312 P.3d 802, 809 (Wyo. 2013) (citing *Mitcheson*, ¶ 11, 277 P.3d at 730). "A preponderance of the evidence is 'proof which leads the trier of fact to find that the existence of the contested fact is more probable than its non-existence.'" *Id.* (quoting *Mitcheson,* ¶ 11, 277 P.3d at 730, and *Kenyon*, ¶ 22, 247 P.3d at 851).

[¶14] Wyo. Stat. Ann. § 27-14-102(a)(xi) (LexisNexis 2021) defines a compensable injury, in relevant part, as "any harmful change in the human organism . . . arising out of and in the course of employment . . . ." To demonstrate the injury arose out of and in the course of employment, the claimant must prove a causal connection between the "'work-related incident and the injury.'" *Boyce,* ¶ 22, 402 P.3d at 400 (quoting *Leib v. State ex rel. Wyo. Dep't of Workforce Servs., Workers' Comp. Div.*, 2016 WY 53, ¶ 12, 373 P.3d 420, 424 (Wyo. 2016)). *See also, Vinson,* ¶ 29, 473 P.3d at 309 ("For an injury to 'arise out of and in the course of employment,' there must be a 'causal nexus between the injury and some condition, activity, environment or requirement of the employment.'" (quoting *Matter of Lysne*, 2018 WY 107, ¶ 13, 426 P.3d 290, 295 (Wyo. 2018)) (quotation marks and other citation omitted)).

[¶15] An agency's determination of causation is a factual question. *See, e.g., Boylen v. State ex rel. Wyo. Dep't of Workforce Servs., Workers' Comp. Div.,* 2022 WY 39, ¶¶ 14-15, 506 P.3d 765, 770 (Wyo. 2022) (applying the substantial evidence standard to review the agency's factual findings that the worker's compensation claimant did not establish causation); *Vinson,* ¶ 32, 473 P.3d at 310 (causation is a factual question and the agency's decision on whether the claimant has met his burden of proof is reviewed for substantial evidence). When a single work-related accident is alleged to have caused an injury, the causal connection must generally be established by medical expert testimony. *Thornberg v. State ex rel. Wyo. Workers' Comp. Div.,* 913 P.2d 863, 867 (Wyo. 1996) (citing *Hansen v. Mr. D's Food Ctr.,* 827 P.2d 371, 373 (Wyo. 1992)) (other citation omitted). "The claimant must show the causal connection to a reasonable degree of medical probability." *Guerrero,* ¶ 15, 352 P.3d at 267. *See also, Baker v. State ex rel. Wyo. Dep't of Workforce Servs., Workers' Comp. Div.,* 2017 WY 60, ¶ 10, 395 P.3d 1095, 1099 (Wyo. 2017) (for a claimant to prove a causal connection between the workplace accident and his injury, he is generally required to provide "expert medical testimony that it is more probable than not that the work contributed in a material fashion to the precipitation, aggravation or acceleration of the injury" (citation omitted)).

[¶16] Mr. Hart claims the Medical Commission's conclusion that he failed to meet his burden of proving his thoracic spine injury was related to the September 2017 work accident was arbitrary and capricious. He is mistaken about the standard of review. As we stated above, the Medical Commission's determination of causation was a factual question, for which the substantial evidence standard of review applies.

[¶17] After making detailed findings of fact about the medical records and expert testimony presented in Mr. Hart's case, the Medical Commission concluded:

> 47. Mr. Hart's injury to the thoracic spine is not well documented. For nearly 9 months [after the workplace accident], Mr. Hart's medical records do not mention any pain in the thoracic spine. On the day of the [work-related] injury, Mr. Hart did note in his injury report that he had injured his ["]back["] and the location of the injury was "L1." L1 is in the lumbar spine. All the medical records in this matter generated from September 18, 2017[,] . . . until June 4, 2018[,] describe an injury to the lower back. There is no mention of any injury to the thoracic spine. There is no mention of any pain in the thoracic spine. The medical records do not establish causation.
>
> 48. Mr. Hart presented deposition testimony from his treating physician Dr. Hammond. Dr. Hammond was asked by Mr. Hart's attorney: "[I]s there any way to essentially correlate [Mr. Hart's thoracic spine injury] to any specific event or specific work injury here?" Dr. Hammond did not "recall any specific detailed discussion" with Mr. Hart about the injury itself. He further testified that the coding that was used to designate the injury was for "a wear and tear related injury[.]" Dr. Hammond testified that "it's impossible for me to say that specifically this occurred on one day at work." Dr. Hammond testified that as far as the facts surrounding the injury that occurred on September 17, 2017, he had "little to no recollection of that."

(record citations omitted).

[¶18] Mr. Hart does not specifically challenge the Medical Commission's factual findings regarding the medical records or expert testimony. Instead, he asserts he proved his thoracic spine injury was caused by the September 2017 work accident because he generically listed "back" as the injured body part on the injury report he completed shortly after the accident. He contends he injured his "whole" back at that time but did not complain specifically about mid-back (thoracic spine) pain because he was focused on obtaining treatment for his lower back (lumbar spine) as it "hurt the most." He also claims

6

the fact that Dr. Hammond treated thoracic vertebrae T10 through T12, which are "pretty much right at the junction where the thoracic spine . . . turns into the lumbar spine," demonstrates his thoracic spine injury was related to the workplace accident.

[¶19] We conclude there is substantial evidence in the record to support the Medical Commission's decision that Mr. Hart did not meet his burden of proving he injured his thoracic spine in the September 2017 workplace accident. Mr. Hart reported to his employer and the Division that he incurred a "back" injury at work on September 17, 2017. Contrary to Mr. Hart's argument on appeal, he did not generically claim he suffered a back injury. Instead, he specifically described the location of the injury as L1, which is part of the lumbar spine. The medical records from the day after the accident state that his "chief complaint" was, "[m]y low back hurts." A few days later, the Division issued a final determination approving worker's compensation coverage for an injury to Mr. Hart's "lower lumbar spine"; he did not object to the determination. The medical records show that, over the next several months, Mr. Hart consistently complained of, and sought treatment for, pain in his lumbar spine without any mention of pain in his thoracic spine. In April 2018, he passed a work status test and was released to full duty work.

[¶20] The first mention of thoracic pain is found in a medical record from Mr. Hart's appointment with Dr. Hammond on June 4, 2018. As Mr. Hart points out, Dr. Hammond testified he treated the area of Mr. Hart's thoracic spine which was at the junction with the lumbar spine. However, Dr. Hammond specifically stated he could not opine to a reasonable degree of medical probability that Mr. Hart's thoracic spine injury was related to the September 2017 work accident. Consequently, Mr. Hart did not offer the requisite expert medical testimony to establish causation. *See Thornberg,* 913 P.2d at 867; *Hansen,* 827 P.2d at 373; *Baker,* ¶ 10, 395 P.3d at 1098-99.

[¶21] The Medical Commission's decision that Mr. Hart did not meet his burden of proving a causal connection between his workplace accident and thoracic spine injury is supported by substantial evidence as it clearly is not "contrary to the overwhelming weight of the evidence in the record as a whole." *Mitcheson,* ¶ 9, 277 P.3d at 730. *See also, Dale,* ¶ 22, 188 P.3d at 561; *Boyce,* ¶ 21, 402 P.3d at 399. The lack of medical evidence of causation allows a reasonable mind to accept the Medical Commission's decision that Mr. Hart failed to meet his burden of proving the elements of his worker's compensation claim. *Mitcheson,* ¶ 9, 277 P.3d at 730; *Boyce,* ¶ 21, 402 P.3d at 399.

### *"Rule Out" Doctrine*

[¶22] Mr. Hart argues the Medical Commission erred by denying coverage for his thoracic spine evaluation and treatment because they were performed to "rule out" that area of the spine as a cause of his work-related lumbar spine pain. He again urges us to review the agency decision using the arbitrary and capricious standard. Given resolution of this issue

7

requires evaluation of the Medical Commission's factual findings and the sufficiency of the evidence presented by Mr. Hart, the substantial evidence standard of review applies.

[¶23] Under the "rule out" doctrine, "an appropriate diagnostic measure" may be compensable if it is performed to "rule out" an area or condition as a source of the symptoms associated with a work-related injury, even if the measure does not reveal a causal relationship. *Snyder v. State ex rel. Wyo. Workers' Comp. Div.,* 957 P.2d 289, 295 (Wyo. 1998). In *Snyder,* the claimant fell at work, injuring his back and shoulder. *Id.* at 291. The back problem resolved, but the claimant was still experiencing pain in his shoulder and tingling in his hands. *Id.* at 295. Mr. Snyder's physician examined his cervical spine and ordered x-rays of the area to determine if the claimant's shoulder and hand symptoms were caused by an injury to his neck from the work-related fall. *Id.* at 294-95. We held the cervical exam and x-rays were covered worker's compensation expenses even though they revealed no such causal connection because they were performed as a diagnostic measure for the claimant's work-related injury, i.e., to "rule out" other medical conditions associated with the injury. *Id.* at 295.

[¶24] To be compensable under the "rule out" doctrine, there must be an "'objective indication of a physiologic connection between the claimant's injury and the diagnostic measure at issue.'" *Delacastro v. State ex rel. Wyo. Workers' Safety & Comp. Div.,* 2014 WY 40, ¶ 25, 321 P.3d 327, 333 (Wyo. 2014) (quoting *Mitcheson,* ¶ 23, 277 P.3d at 734-35). If the evidence does not demonstrate the tests were performed to diagnose the work-related injury, the claimant is not entitled to worker's compensation benefits. *Price v. State ex rel. Wyo. Workers' Safety & Comp. Div.,* 2011 WY 160, ¶¶ 11-14, 266 P.3d 940, 943-44 (Wyo. 2011) (MRI was not performed to "rule out" a cervical spine injury as a source of the claimant's shoulder pain from a work-related injury because previous tests had already determined there was no such causal connection).

[¶25] In determining Mr. Hart was not entitled to benefits under the "rule out" doctrine, the Medical Commission stated:

> [I]t is clear that the treatment for [Mr. Hart's] thoracic spine, that occurred nearly 9 months after the work-related incident, was not performed for the purpose of ruling out a source of pain to the lumbar spine. This procedure was being performed to determine the source of pain for a distinct injury to the thoracic spine, an injury that had not been presented to the physician for months from initiating treatment for the lumbar spine. There was no evidence in the record that would have supplied an "objective indication of a physiologic connection between the claimant's injury and the diagnostic measure at issue." *Mitcheson, . . .* ¶¶ 22-23, 277 P.3d at 734-35.

[¶26] Mr. Hart claims Dr. Hammond's testimony that he used the "process of elimination of isolating certain parts of the spine that may be potential pain targets and treating them and then watching to see what their reaction is to . . . the treatment" shows he was testing and treating Mr. Hart's thoracic spine to see if it would help with the pain in his lumbar spine. The record does not support Mr. Hart's argument. The medical records are clear that Mr. Hart complained of thoracic spine pain independent of the compensable lumbar spine pain Dr. Hammond had been treating. Dr. Hammond testified he evaluated and treated different areas of Mr. Hart's thoracic spine to diagnose the pain he was experiencing in that section of his back, not to address the pain in his lumbar spine. The evidence did not establish a physiologic relationship between the thoracic evaluation and treatment and Mr. Hart's work-related injury to his lumbar spine. There is substantial evidence in the record to support the Medical Commission's determination that Mr. Hart did not meet his burden of proving his thoracic spine evaluation and treatment were compensable under the "rule out" doctrine.

## CONCLUSION

[¶27] The record contains substantial evidence to support the Medical Commission's determinations that Mr. Hart did not meet his burden of proving 1) his thoracic spine injury was related to his September 2017 work-related accident, or 2) the evaluation and treatment of his thoracic spine were for the purpose of ruling out that area of the back as a source of his work-related lumbar spine pain.

[¶28] Affirmed.

9