2012 WY 74

In the Matter of the Worker's Compensation Claim of Gary A. MITCHE-SON, Appellant (Petitioner),

v.

STATE of Wyoming, ex rel., WYOMING WORKERS' SAFETY AND COMPENSATION DIVISION, Appellee (Respondent).

No. S–11–0236.

Supreme Court of Wyoming.

May 25, 2012.

Representing Appellant: Robert A. Nicholas, Nicholas & Crank, PC, Cheyenne, Wyoming.

Representing Appellee: Gregory A. Phillips, Attorney General; John D. Rossetti, Deputy Attorney General; Michael J. Finn, Senior Assistant Attorney General; Kelly Roseberry, Assistant Attorney General.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

BURKE, Justice.

[¶ 1] The Wyoming Workers' Safety and Compensation Division awarded benefits to Appellant, Gary Mitcheson, after he fell at work and injured his tailbone in July of 2007. Approximately two years later, the Division issued a final determination denying payment for medical care that Mr. Mitcheson claimed was related to his workplace injury. Mr. Mitcheson requested a contested case hearing, and the Office of Administrative Hearings (OAH) upheld the Division's determination. Mr. Mitcheson appealed to the district court, which upheld the OAH's order. He challenges the district court's decision in this appeal. We affirm.

### ISSUES

[¶ 2] Appellant presents the following issues:

1. Is the OAH Order arbitrary and unsupported by substantial evidence?

2. Is the OAH Order denying payment for treatment of Mr. Mitcheson's tailbone injury arbitrary?

3. Is [the] OAH Order denying payment for medical care contrary to the "Rule Out" Rule and therefore contrary to law?

The Division phrases the issues as follows:

1. In making its determination, the OAH utilized the medical records submitted into evidence, but gave very little weight to the testimony of Mitcheson and his physician because the OAH found their testimonies to be incredible. Does the evidence that the OAH deemed credible constitute substantial evidence to support the OAH's determination that Mitcheson failed to prove a causal connection between his 2007 work injury and his 2009 medical treatment?

2. Was the OAH's decision denying benefits to Mitcheson arbitrary, capricious, or otherwise not in accordance with Wyoming law?

### FACTS

[¶ 3] Mr. Mitcheson fell and fractured his tailbone on July 8, 2007, as he was finishing work on a water well for his employer, Douglas Exploration. According to Mr. Mitcheson, he fell backwards off of a raised deck, striking his tailbone on a piece of angle iron on his way down, and then fell approximately four more feet, landing on the edge of a metal, box-shaped mud pit, which was situated eighteen inches above the ground. Mr. Mitcheson was unable to go to work the next day because he was too sore. Suspecting that he had broken his tailbone, Mr. Mitcheson rested in his motel room for a few days and then drove to his home in Utah.

[¶ 4] Five days after his fall, Mr. Mitcheson was examined by a nurse practitioner at the Emery Medical Center in Castle Dale, Utah. The initial report of injury submitted to the Division indicated that Mr. Mitcheson had reported pain in his tailbone and left side. The report also stated that Mr. Mitcheson had a "resolving large bruise to lower back," as well as bruising on his tailbone and left flank. Mr. Mitcheson was diagnosed with a tailbone fracture and a left lumbar hematoma, and was treated with nonnarcotic pain medication and a plastic donut. The Wyoming Workers' Safety and Compensation Division issued a final determination opening Mr. Mitcheson's case, which noted that the body parts to be covered were his "tailbone (coccyx), kidney, mid back (thoracic), and low back (lumbar)."

[¶ 5] Although Mr. Mitcheson was released to work on the day after his visit to the Emery Medical Center, he did not work again until seven months later, in February of 2008.[1] In October of 2008, Mr. Mitcheson found a job driving a truck for Target Trucking, which required a commercial driver's license (CDL). In order to maintain his CDL, Mr. Mitcheson was required to pass a physical examination administered by a Utah Department of Transportation medical examiner. Due to a high diastolic blood pressure reading on his first two medical exams, however, Mr. Mitcheson did not qualify for a one-year medical certificate until his third exam, in January of 2009. On the "health history" portion of each of his medical examinations, Mr. Mitcheson reported that he had no history of spinal injury or disease, and that he had no history of chronic low back pain.

[¶ 6] In March of 2009, approximately twenty months after his workplace injury, and approximately five months after he began working as a truck driver, Mr. Mitcheson returned to the Emery Medical Center and reported that he had been having pain in his lower back since the accident in July of 2007. At this visit, Mr. Mitcheson complained of low back pain and vertebral tenderness. Mr. Mitcheson was referred to Dr. Robert

---

1. Mr. Mitcheson's job with Douglas Exploration apparently ended due to completion of the well he was working on when his injury occurred.

Bourne, who noted in July of 2009 that Mr. Mitcheson complained of back pain and numbness in his left foot, and that Mr. Mitcheson's complaints stemmed "from an accident two years ago when he was working on a drill rig." Dr. Bourne ordered an x-ray that revealed "a mild to moderate sized bone spur at L4 with minimal degeneration at that level." Dr. Bourne submitted a bill to the Division and requested authorization for an MRI. The Division denied payment, finding that "Current treatment to the back is not related to the original July 8, 2007 work injury to the coccyx and is not considered reasonable and necessary medical care pursuant to Wyoming Statute 27–14–102(a)(xii)." Mr. Mitcheson objected to the Division's final determination, and the matter was set for a contested case hearing before the OAH.

[¶ 7] Prior to the contested case hearing, Mr. Mitcheson saw Dr. Larry Copeland at Western Orthopedics & Sports Medicine in June of 2010, approximately eleven months after his visit to Dr. Bourne. Mr. Mitcheson complained of intermittent pain in his low back and numbness in his left foot. An x-ray of Mr. Mitcheson's back revealed "marginal spurring of the lower lumbar area with slight increased sclerosis in the facets at L4–5 and L5–S1" and "narrowing of the L5–S1 disc space." Dr. Copeland noted the following impressions: "1: Mild to moderate degenerative L5–S1 disc disease. 2: Mild lumbar spondylosis." Dr. Copeland stated, in deposition testimony introduced at the hearing, that it was his opinion that Mr. Mitcheson's back problems were the result of his workplace accident in July of 2007. He acknowledged, however, that his opinion was premised on Mr. Mitcheson's report that he had experienced "chronic" pain since the accident, and further, that his opinion would change "somewhat" if Mr. Mitcheson's pain was not chronic.

[¶ 8] In addition to Dr. Copeland's deposition testimony, the hearing examiner received testimony from Mr. Mitcheson and his wife, as well as documentary evidence of Mr. Mitcheson's medical records. After considering all of the evidence, the hearing examiner found that Mr. Mitcheson had failed to meet his burden of proof:

Although there is no dispute that Mitcheson suffered a significant fall and fractured his tailbone in July 2007, Mitcheson failed to meet his burden of proof because much of his case, including Dr. Copeland's opinion, depended upon the credibility of Mitcheson's testimony and reported medical history, which were significantly undermined by his admitted lack of candor regarding his DOT physicals. Further, the eighteen month period of no medical care was not consistent with Mitcheson's position that he had chronic, unimproved and worsening low back symptoms since his injury.

As a result, the hearing examiner upheld the Division's final determination. The district court affirmed the hearing examiner's decision, and Mr. Mitcheson timely filed this appeal.

### STANDARD OF REVIEW

[¶ 9] Review of an administrative agency's action is governed by the Wyoming Administrative Procedure Act, which provides that:

(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

. . .

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

(B) Contrary to constitutional right, power, privilege or immunity;

(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

(D) Without observance of procedure required by law; or

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

Wyo. Stat. Ann. § 16-3-114(c) (LexisNexis 2009). We review an administrative agency's findings of fact pursuant to the substantial evidence test. *Dale v. S & S Builders, LLC,* 2008 WY 84, ¶ 22, 188 P.3d 554, 561 (Wyo. 2008). Substantial evidence is relevant evidence which a reasonable mind might accept in support of the agency's conclusions. *Id.,* ¶ 11, 188 P.3d at 558. Findings of fact are supported by substantial evidence if, from the evidence in the record, this Court can discern a rational premise for the agency's findings. *Middlemass v. State ex rel. Wyo. Workers' Safety & Comp. Div.,* 2011 WY 118, ¶ 11, 259 P.3d 1161, 1164 (Wyo.2011). When the hearing examiner determines that the burdened party failed to meet his burden of proof, we will decide whether there is substantial evidence to support the agency's decision to reject the evidence offered by the burdened party by considering whether that conclusion was contrary to the overwhelming weight of the evidence in the record as a whole. *Dale,* ¶ 22, 188 P.3d at 561.

[¶ 10] The arbitrary and capricious standard of review is used as a "safety net" to catch agency action which prejudices a party's substantial rights or which may be contrary to the other review standards under the Administrative Procedure Act, yet is not easily categorized or fit to any one particular standard. *Id.,* ¶ 23, 188 P.3d at 561. The arbitrary and capricious standard applies if the agency failed to admit testimony or other evidence that was clearly admissible, or failed to provide appropriate findings of fact or conclusions of law. *Id.* We review an agency's conclusions of law *de novo. Id.,* ¶ 26, 188 P.3d at 561-62.

### DISCUSSION

[¶ 11] A claimant in a workers' compensation case has the burden to prove all the elements of the claim by a preponderance of the evidence. *Kenyon v. State ex rel. Wyo. Workers' Safety & Comp. Div.,* 2011

WY 14, ¶ 22, 247 P.3d 845, 851 (Wyo.2011). A preponderance of the evidence is "proof which leads the trier of fact to find that the existence of the contested fact is more probable than its non-existence." *Id.* To prove entitlement to an award of benefits, a claimant must demonstrate that he sustained an "injury," as defined in Wyo. Stat. Ann. § 27-14-102(a)(xi):

"Injury" means any harmful change in the human organism other than normal aging and includes damage to or loss of any artificial replacement and death, arising out of and in the course of employment while at work in or about the premises occupied, used or controlled by the employer and incurred while at work in places where the employer's business requires an employee's presence and which subjects the employee to extrahazardous duties incident to the business.

Further, the claimant must prove a causal connection exists between a work-related injury and the injury for which workers' compensation benefits are sought. *Kenyon,* ¶ 22, 247 P.3d at 851.

[¶ 12] In determining that Mr. Mitcheson did not meet his burden of proving his lower back symptoms were related to his workplace injury, the hearing examiner found that Mr. Mitcheson's credibility was "significantly undermined" by the fact that he did not seek treatment for his symptoms until March of 2009, and by inconsistencies in Mr. Mitcheson's account of the history of his lower back symptoms. The hearing examiner's credibility findings were explained as follows:

For a number of reasons, this Office finds and concludes Mitcheson did not prove, by a preponderance of the evidence, his low back injury and symptoms treated by Dr. Bourne and Dr. Copeland, were caused by or related [to] his July 8, 2007, work related accident.

52. First, even though Mitcheson knew the Division opened a case and provided coverage for Mitcheson's July 8, 2007, low back and tailbone injuries, Mitcheson did not seek medical care or treatment for his low back injury and symptoms from July 13, 2007 until March 20, 2009. According

to Dr. Copeland's June 1, 2010 examination notes, Mitcheson stated "that his pain has not improved at all since the injury, making it very difficult for him to work." It was very difficult for this Office to believe Mitcheson had the described ongoing pain and symptoms yet did not seek any medical care for approximately eighteen months. In other words, it was not believable that Mitcheson's low back pain and symptoms which began with his fall on July 8, 2007, continued unabated and worsened yet he did not seek any treatment or care for eighteen months, he continued to work driving heavy equipment, he did not report his symptoms to the DOT medical examiner and the DOT medical examiner did not find any symptoms or pain on examination.

53. Second, Mitcheson's explanations for not seeking medical care and for not reporting his injury to the DOT medical examiner were not reasonable. There was no credible evidence suggesting Mitcheson would lose his CDL if he revealed his 2007 back injury. To the contrary, the evidence demonstrated he revealed his high blood pressure but kept his CDL and the actual Medical Examination Report indicated "[t]he presence of a certain condition may not necessarily disqualify a driver, particularly if the condition is controlled adequately, is not likely to worsen or is readily amenable to treatment." In addition, although it was reasonable for Mitcheson to believe he would continue to have some pain after he fractured his pelvis for a period of time, it was not reasonable for him to assert he had eighteen months of unabated and worsening pain yet just lived with it.

54. Third, Mitcheson's case and proof of the essential causal connection between his March 2009 low back injury and symptoms depended upon his testimony and reported history of his pain and symptoms, which, as discussed previously, this Office found questionable. In order to conclude that Mitcheson's March 2009 low back injury and symptoms are related to his July 2007 [injury], this Office had to believe Mitcheson's testimony and reported history that he had ongoing pain and symptoms from July 8, 2007 through March 20, 2009, and that he had no other accidents or injuries. Due to his demonstrated willingness to not reveal material information about his lower back to DOT and because having continuing and worsening pain at the same time he is operating heavy equipment is inconsistent with a history of eighteen months of no medical care, this Office could not rely on Mitcheson's testimony and history.

55. Fourth, Mitcheson's 2009 symptoms and diagnoses were different than his 2007 diagnoses and symptoms. In [2007] he was diagnosed with a contused lower back and a fractured coccyx, but in 2009 he was diagnosed with a herniated disc at L4, and the steroid injection confirmed L4 to be the source of his pain. Moreover, in 2007, Mitcheson's pain was located at his tailbone and he had no associated symptoms but in March 2009 his pain was located in the center of his lumbar spine above the tailbone and he reported urinary problems and foot numbness. In addition, Dr. Copeland acknowledged Mitcheson's 2009 L4 diagnosis was above his coccyx.

The hearing examiner also discounted Dr. Copeland's opinions as a consequence of his findings regarding Mr. Mitcheson's credibility:

46. This Office concluded Dr. Copeland's opinion testimony was not persuasive or helpful because Dr. Copeland's opinion was dependent upon the accuracy of the history provided to him by Mitcheson, which this Office found questionable. Dr. Copeland readily agreed his opinion assumed Mitcheson had chronic low back pain ever since his work related fall and his opinion would change if Mitcheson had not been having chronic low back pain and symptoms since his injury.

Based on these findings, the hearing examiner concluded that Mr. Mitcheson "did not establish his need for treatment to his lumbar spine for low back pain and symptoms in March 2009 was caused by his July 8, 2007, injury at work."

[¶ 13] In Mr. Mitcheson's first issue, he contends that the hearing examiner, in deter-

mining that his low back symptoms were not caused by or related to his workplace injury, made inaccurate factual findings and disregarded uncontested facts. He challenges several of the hearing examiner's credibility findings, asserting that they were arbitrary and unsupported by the evidence. He claims there was no evidence to support the hearing examiner's finding that the lapse between the time of his injury and the time of treatment was unreasonable and inconsistent with his reports of unabated pain. Mr. Mitcheson further claims that "The only evidence submitted by the Division to rebut the evidence presented by Mr. Mitcheson regarding his back condition is Mr. Mitcheson's re-application for his CDL where he did not check the appropriate boxes regarding previous back injuries." (Emphasis omitted.) With regard to this evidence, Mr. Mitcheson asserts that the hearing examiner arbitrarily and unreasonably rejected his testimony that he would not be able to retain his CDL if he revealed his back pain to the department of transportation medical examiner.

[¶ 14] Our evaluation of the hearing examiner's decision is directed by well-established standards for reviewing administrative agency action. As we have stated on many occasions since our decision in *Dale*, 188 P.3d 554,

> If, in the course of its decision making process, the agency disregards certain evidence and explains its reasons for doing so based upon determinations of credibility or other factors contained in the record, its decision will be sustainable under the substantial evidence test. Importantly, our review of any particular decision turns not on whether we agree with the outcome, but on whether the agency could reasonably conclude as it did, based on all the evidence before it.

*Davenport v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2012 WY 6, ¶ 12, 268 P.3d 1038, 1042 (Wyo.2012). Further, we give substantial deference to a hearing examiner's credibility findings: "Credibility determinations are the unique province of the hearing examiner, and we eschew re-weighing those conclusions. We defer to the agency's determination of witness credibility unless it is clearly contrary to the overwhelming weight of the evidence." *Beall v. Sky Blue Enters. (In re Beall)*, 2012 WY 38, ¶ 28, 271 P.3d 1022, 1034 (Wyo.2012) (citation omitted).

[¶ 15] We find that the hearing examiner's findings are supported by substantial evidence. As indicated in the findings set forth above, the hearing examiner's primary concerns focused on (1) the amount of time that elapsed between Mr. Mitcheson's injury in July, 2007 and his visit to the Emery Medical Center in March, 2009; (2) the variations in Mr. Mitcheson's symptoms as reported when he was injured in 2007 and when he sought treatment in 2009; and (3) the inconsistencies in Mr. Mitcheson's stated reasons for delaying treatment until 2009 and for failing to report his back symptoms on his department of transportation medical exams.

[¶ 16] First, in disregarding Mr. Mitcheson's testimony that he had experienced constant and unrelenting pain since his workplace injury, the hearing examiner could reasonably conclude that Mr. Mitcheson's account was inconsistent with the failure to report his back symptoms until March of 2009, over twenty months after his injury. During the time that elapsed between his injury and his visit to the Emery Medical Center, Mr. Mitcheson went back to work for Douglas Exploration as a driller's helper, and then worked for Moab Salt, LLC as a laborer and equipment operator. In addition, during the five months immediately preceding his visit to the Emery Medical Center in March of 2009, Mr. Mitcheson worked as a truck driver for Target Trucking. Considering the significant lapse between the time of Mr. Mitcheson's injury and time at which he sought treatment for his back problems, his varied work history subsequent to the 2007 injury, and the lack of any evidence to corroborate his testimony of continuous back pain during this period, the hearing examiner's determination that Mr. Mitcheson's reports of constant back pain were not credible is supported by the record.

[¶ 17] Second, the hearing examiner's finding that Mr. Mitcheson's testimony was

not consistent with the symptoms documented in his medical history also finds support in the record. As noted by the hearing examiner, Mr. Mitcheson was diagnosed with a broken tailbone and lumbar hematoma after his injury in 2007, but was found to have "[m]ild to moderate degenerative L5–S1 disc disease" and "[m]ild lumbar spondylosis" upon his examination by Dr. Copeland in June of 2010. Further, although Mr. Mitcheson testified that he experienced back pain "ever since day one.... From the day that I was injured" that had "gotten worse," and had "never gotten better," he reported during his visit with Dr. Bourne in July of 2009 that he had "intermittent back pain" and "intermittent numbness" in his left foot. Accordingly, the fact that Mr. Mitcheson's representations of his symptoms at the hearing did not align with the symptoms documented in his medical records provides further support for the hearing examiner's conclusion that Mr. Mitcheson was not a credible witness.

[¶ 18] Finally, the hearing examiner could reasonably determine that Mr. Mitcheson's explanations for his failure to report his back symptoms for nearly two years, as well as his failure to report his symptoms on his department of transportation medical exams, reflected poorly on his credibility. Mr. Mitcheson stated that he did not seek treatment for his back pain because he could not afford to see a doctor. However, on cross-examination, Mr. Mitcheson acknowledged that he knew the Division would pay for medical treatment relating to his injury, and that he had received a letter from the Division instructing him to submit invoices from his treatment providers to the Division. With regard to the lack of any indication of his back pain on the department of transportation medical exams, Mr. Mitcheson initially stated that "at the time [I] was on high blood pressure pills [and] was trying to get my high blood pressure down. I wasn't thinking. And another thing is that when you put down a back injury, nobody wants to hear you." Mr. Mitcheson subsequently testified that "if I didn't pass any of [the medical exams], I would be out of work." This testimony, however, was contradicted by the fact that Mr. Mitcheson received, initially, a three-month extension, and later, a one-year extension of his medical certificate, despite having high blood pressure. Further, Mr. Mitcheson acknowledged that the medical examination form expressly stated that the presence of a certain condition would not necessarily disqualify a driver from receiving a medical certificate.

[¶ 19] In light of the inconsistencies between Mr. Mitcheson's testimony at the contested case hearing and his documented medical history, and the contradictions in Mr. Mitcheson's explanations for his extensive delay in seeking treatment and his failure to report his back symptoms on his department of transportation medical exams, we cannot find that the hearing examiner's credibility determination is clearly contrary to the overwhelming weight of the evidence. Additionally, the hearing examiner properly determined that Mr. Mitcheson's lack of credibility provided reason to discount the medical opinions of Dr. Copeland. As we have previously stated, "a hearing examiner is entitled to disregard an expert opinion if he finds the opinion unreasonable, not adequately supported by the facts upon which the opinion is based, or based upon an incomplete and inaccurate medical history provided by the claimant." *Taylor v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2005 WY 148, ¶ 15, 123 P.3d 143, 148 (Wyo.2005). Because the causal link between Mr. Mitcheson's 2007 workplace injury and his treatment in 2009 depended entirely on the testimony of Mr. Mitcheson, and the opinion of Dr. Copeland, we find substantial evidence to support the hearing examiner's conclusion that Mr. Mitcheson did not meet his burden of establishing that his back treatment was related to his workplace injury.

[¶ 20] In his second issue, Mr. Mitcheson claims that his treatment was also related to his tailbone pain, and that the hearing examiner erred in failing to provide factual findings on this issue. In support of this claim, Mr. Mitcheson asserts that he "frequently discussed his tailbone pain with his doctors and healthcare providers." He requests that we remand this matter back to the OAH with instructions to make specific findings regarding the treatment of his tail-

bone, or enter an order directing the Division to pay for treatment of his tailbone. We are unable to find merit in Mr. Mitcheson's claim.

[¶ 21] First, we note that the record does not indicate that Mr. Mitcheson received treatment for his tailbone pain after his initial visit to the Emery Medical Center in July of 2007. There is no indication that Mr. Mitcheson complained of pain in his tailbone during his visit to Dr. Bourne in July of 2009, which was the treatment subject to the Division's final determination in this case. Further, after his consultation with Dr. Copeland in June of 2010, Dr. Copeland recommended, and Mr. Mitcheson received, an L4 epidural injection to treat the pain in his back. Although Mr. Mitcheson's tailbone pain was noted during his visit to Dr. Copeland, there is no indication in the record that he received any treatment other than the steroid injection. More importantly, however, this issue has not been raised until this appeal. The contested decision in this case was the Division's determination that the "Current treatment [with Dr. Bourne] to [Mr. Mitcheson's] *back* is not related to the original July 8, 2007 work injury to the coccyx and is not considered reasonable and necessary medical care." (Emphasis added.) At the contested case hearing, counsel for Mr. Mitcheson acknowledged that the issue was "whether Mr. Mitcheson can prove his July 2009 ... *low-back pain* is causally connected to his July 8, 2007, work injury." (Emphasis added.) Indeed, counsel for Mr. Mitcheson began his opening statement by declaring that "this hearing is about Gary Mitcheson and whether or not his injury that he sustained while working over in Riverton on a rig July 8 of 2007 is related to his ongoing *back problems* that he is having today." (Emphasis added.) At no point during the hearing did counsel suggest that Mr. Mitcheson's treatment was related to his tailbone. Because the issue was not raised below, we decline to consider it on appeal. *See In re Beall,* ¶ 15, 271 P.3d at 1029.

[¶ 22] Finally, in Mr. Mitcheson's third issue, he claims that his visits to Dr. Bourne and Dr. Copeland are compensable "regardless of the relatedness of the com-

plaints to the original work injury because both doctors were ruling out the possible causes of Mr. Mitcheson's back pain." He states that this conclusion is compelled by our decision in *Snyder v. State ex rel. Wyo. Worker's Comp. Div.,* 957 P.2d 289 (Wyo. 1998). In *Snyder,* the employee-claimant fell at work and injured his shoulder and back. *Id.* at 291. The Division denied reimbursement of a bill for cervical x-rays and a portion of an office visit related to cervical complaints, as well as a bill for cervical traction therapy. *Id.* at 292. We upheld the hearing examiner's decision denying benefits relating to the cervical traction therapy, noting that the treating physician "did not state that the treatments were necessary for proper attention to the work-related occurrence." *Id.* at 295. However, we reversed the denial of compensation for the cervical x-rays and exam based on the treating physician's determination that tingling in the claimant's hands indicated that his neck was a possible source of his shoulder problems. We described the treating physician's actions as follows:

> [The treating physician's] notes reflect that [the claimant] reported the tingling began when his shoulder was retracted during physical therapy. The tingling alerted [the treating physician] that a neck problem may have been the source of [the claimant's] difficulties, including the shoulder pain. Consequently, he ordered neck x-rays because he believed x-rays were appropriate to investigate the claimant's symptoms.

*Id.* After noting that no evidence was presented to undermine or contradict the treating physician's course of action, we stated that "An appropriate diagnostic measure is not non-compensable merely because it fails to reveal an injury which is causally connected to an on-the-job injury." *Id.*

[¶ 23] The present case is distinguishable from *Snyder.* In this case, although Dr. Bourne requested authorization for an MRI to rule out the possibility of a disc herniation, there is no indication in Dr. Bourne's notes that he believed a disc herniation was caused by the injury to Mr. Mitcheson's tailbone. As a result, the element critical to the holding in *Snyder,* which was the

objective indication of a physiologic connection between the claimant's injury and the diagnostic measure at issue, is absent in this case. Given the lack of such a connection, we conclude that the treatment was not compensable as a diagnostic test. This conclusion is consistent with our recent decision in *Price v. State ex rel. Wyo. Workers' Safety & Comp. Div.,* 2011 WY 160, ¶ 12, 266 P.3d 940, 943 (Wyo.2011), where we stated that "While we acknowledge that procedures to rule out the source of an injury are not necessarily non-compensable simply because the test may show that the injury is not in fact related to a workplace accident, we cannot extend that logic to say that all diagnostic tests ought to be compensable." Finally, because there was no indication that any treatment received from Dr. Copeland was intended to "rule out" the possible causes of Mr. Mitcheson's back pain, we find no basis for Mr. Mitcheson's claim that treatment received from Dr. Copeland is compensable as a diagnostic measure.

[¶ 24] Affirmed.