2008 WY 105

**In the Matter of the Worker's Compensation Claim of Roberta J. PALMER, Appellant (Petitioner),**

v.

**STATE of Wyoming, ex rel., WYOMING WORKERS' SAFETY AND COMPENSATION DIVISION, Appellee (Respondent).**

No. S–07–0244.

Supreme Court of Wyoming.

Sept. 8, 2008.

Representing Appellant: David M. Gosar, Gosar Law Office, Jackson, Wyoming.

Representing Appellee: Bruce A. Salzburg, Attorney General; John William Renneisen, Deputy Attorney General; Steven R. Czoschke, Senior Assistant Attorney General; Kristi Marie Radosevich, Assistant Attorney General.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

BURKE, Justice.

[¶1] In 1998, Roberta Palmer was diagnosed with degenerated spinal disks in her lower back. She received various medical and chiropractic treatments, but chose not to undergo surgery when that was recommended by her doctor. In 2003, Ms. Palmer injured her back while at work. She received medical treatments and eventually surgery was performed on her back. The Wyoming Workers' Safety and Compensation Division denied her request for benefits, taking the position that her back problems were preexisting, and therefore not compensable. Ms. Palmer requested a hearing, and the hearing examiner determined that she had sustained a compensable workplace injury affecting part of her back, but that her other degenerative back problems were preexisting

and therefore not compensable. Ms. Palmer has appealed that decision. We affirm in part and reverse in part.

## ISSUES

[¶2] Ms. Palmer presents three issues, which we consider in this order:

1. Does substantial evidence support the hearing examiner's decision awarding partial benefits and/or is the decision arbitrary and capricious?

2. Did the Office of Administrative Hearings err as a matter of law when it apportioned Ms. Palmer's injury between her preexisting condition and the new injury caused by her workplace accident?

3. Did the Office of Administrative Hearings err as a matter of law by failing to apply the ancillary treatment principle to award full benefits in this case?

## FACTS

[¶3] In January of 1998, Ms. Palmer slipped on some ice and fell, causing pain in her back and right groin. Upon seeking treatment, Ms. Palmer was diagnosed with a degenerative spinal condition affecting her disks at the L3–L4, L4–L5, and L5–S1 levels, along with an annular tear at L3–L4. Ms. Palmer received medical and chiropractic treatments over the following months. In August of that year, her treating physician, Dr. Mary Neal, recommended spinal fusion surgery at the L3 through S1 levels. For various reasons, Ms. Palmer chose not to have the surgery.

[¶4] Later that year, Ms. Palmer received a chiropractic "bone traction" treatment. She testified that this treatment largely relieved her back problems, although her chiropractor, Dr. Christopher Koch, testified that Ms. Palmer sought additional treatments in 2002 and 2003 relating, at least in part, to pain in her lower back.

[¶5] On the morning of May 30, 2003, Ms. Palmer injured her lower back lifting inventory at the convenience store where she worked. She left work early and, when the pain continued through the afternoon, sought treatment from Dr. Koch. He advised her to use an over-the-counter anti-inflammatory, to

apply ice packs, and to rest at home. The pain persisted, however, and when Ms. Palmer went back to Dr. Koch, he referred her to the hospital emergency room.

[¶ 6] At the hospital, Ms. Palmer was given pain medication. When that proved ineffective in relieving her pain, she was admitted to the hospital for further evaluation and treatment. An MRI indicated several spinal conditions, including "advanced degenerative changes in her lumbar spine." Over the next several months, Ms. Palmer was treated with varying degrees of success by spinal injections and other medications. Although Ms. Palmer continued to suffer pain in her lower back and right leg, Dr. Neal this time recommended against surgery.

[¶ 7] In April of 2004, Ms. Palmer obtained a second opinion from Dr. Narotzky, a neurosurgeon. He diagnosed many of the same conditions reflected in Ms. Palmer's earlier medical records, along with a new injury that he noted as "probable foraminal disk herniation at the L4–L5 level compressing the L4 nerve root at the right side." Dr. Narotzky concluded that this compression was causing Ms. Palmer's pain and the weakness in her lower back and right leg. He recommended surgery. In July of 2004, Dr. Narotzky performed the surgery, during which he was able to confirm his diagnosis that Ms. Palmer had suffered a herniated disk at level L4–L5. Significantly, the surgery was not limited to fusion at the L4–L5 level where the disk was herniated, but included fusion at the level above, L3–L4, and at the level below, L5–S1.

[¶ 8] The Wyoming Workers' Safety and Compensation Division denied benefits for Ms. Palmer's injury, maintaining that her condition was preexisting and not compensable. Ms. Palmer contested the Division's denial of benefits, and the Office of Administrative Hearings heard her case in July of 2005. The hearing examiner admitted deposition testimony from Drs. Neal, Narotzky, and Koch, and heard live testimony from Ms. Palmer, her husband, and a representative of Ms. Palmer's employer. Ms. Palmer continued to assert that she was entitled to compensation for all of her medical bills, on the basis that her condition was caused by her work-related injury. The Division maintained that Ms. Palmer's condition was not compensable because it was due entirely to a preexisting condition. The hearing examiner reached a position somewhere between the parties' contentions. His final order includes these determinations:

1. The lower lumbar condition at L4–L5, specifically the foraminal herniation, is a work related injury under the Wyoming Workers' Compensation Act. [Ms. Palmer] is awarded benefits in accordance with the Wyoming Workers' Compensation Act, Rules and Regulations and Fee Schedules of the Workers' Safety and Compensation Division.

2. The degenerative condition at levels L3–L4 and L5–S1 and the annular tear at L3–L4 ... is not a work related injury under the Wyoming Workers' Compensation Act. [Ms. Palmer]'s claim for benefits is denied.

The district court affirmed the hearing examiner's decision, and Ms. Palmer timely appealed to this Court.

### STANDARD OF REVIEW

[¶ 9] We review administrative agency decisions pursuant to Wyo. Stat. Ann. § 16–3–114(c)(ii) (LexisNexis 2007), which requires us to:

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

(B) Contrary to constitutional right, power, privilege or immunity;

(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

(D) Without observance of procedure required by law; or

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

We recently reiterated that under "the plain language of the statute, reversal of an agency finding or action is required if it is 'not supported by substantial evidence.'" *Dale v.*

*S & S Builders, LLC,* 2008 WY 84, ¶ 21, 188 P.3d 554, 561 (Wyo.2008). Substantial evidence is "relevant evidence which a reasonable mind might accept" as supporting the agency's decision. *Id.,* ¶ 11, 188 P.3d at 558. "Importantly, our review of any particular decision turns not on whether we agree with the outcome, but on whether the agency could reasonably conclude as it did, based on all the evidence before it." *Id.,* ¶ 22, 188 P.3d at 561. An agency's conclusions of law are reviewed *de novo,* however, and are affirmed only if they are in accordance with the law. *Id.,* ¶ 26, 188 P.3d at 561–62.

## DISCUSSION

[¶ 10] To be compensable under the Wyoming Workers' Compensation Act, an injury must arise "out of and in the course of employment while at work." Wyo. Stat. Ann. § 27–14–102(a)(xi). Benefits are not available for an "injury or condition preexisting at the time of employment with the employer against whom a claim is made." *Id.,* § 27–14–102(a)(xi)(F). The hearing examiner found that Ms. Palmer's foraminal herniation at level L4–L5 was a work-related injury, and therefore compensable. He found that the degenerative condition at levels L3–L4 and L5–S1 was not work-related, but preexisting, and therefore not compensable.

■ [¶ 11] Whether an employee's injury is work-related or preexisting is a question of fact. *Taylor v. State ex rel. Wyoming Workers' Safety & Comp. Div.,* 2005 WY 148, ¶ 9, 123 P.3d 143, 146 (Wyo.2005). Accordingly, we will affirm the hearing examiner's findings if they are supported by substantial evidence, and set them aside if they are not. Our review of the record indicates that there is substantial evidence to sustain the hearing examiner's findings.

[¶ 12] The evidence of record establishes that Ms. Palmer suffered from preexisting back problems. She had been diagnosed in 1998 with degenerative disks at levels L3–L4, L4–L5, and L5–S1. Her back pain at that time was noted as "chronic," and she received numerous medical and chiropractic treatments for her back. As the hearing examiner accurately noted, both Dr. Neal and Dr. Narotzky "agree that [Ms. Palmer] had a degenerative disk disease ... prior to May 30, 2003." There is substantial evidence supporting the hearing examiner's determination that Ms. Palmer's degenerative disk condition was preexisting, not work-related, and not compensable for that reason.

[¶ 13] The evidence of record also establishes that Ms. Palmer's incident at work on May 30, 2003, resulted in injury to her back. Dr. Narotzky testified that an MRI indicated foraminal disk herniation at level L4–L5, along with the preexisting degenerative disk condition. He testified that the foraminal herniation was "clearly caused" by her work injury. According to Dr. Narotzky, the symptoms reported by Ms. Palmer after the incident corresponded with what would be expected from this type of injury. Moreover, when he performed surgery on Ms. Palmer's back, Dr. Narotzky confirmed his diagnosis. There is substantial evidence supporting the hearing examiner's determination that Ms. Palmer suffered foraminal herniation at level L4–L5 as a result of her injury at work.

[¶ 14] Affirming these two determinations does not resolve the case, however. Indeed, the parties do not seriously dispute that Ms. Palmer suffered from both a preexisting condition and a new work-related injury. At the core of their dispute is the question of what benefits Ms. Palmer should receive for medical costs that relate to both a work-related injury and a preexisting condition. The hearing examiner awarded Ms. Palmer benefits for the herniated disk at level L4–L5. Ms. Palmer interprets that to mean she will receive benefits for the spinal fusion at the L4–L5 level, but is "denied all other benefits associated with adjacent levels, including that portion of the fusion surgery that addressed degenerative changes below and above L4–L5." The Division does not deny this interpretation. Based on several different theories, Ms. Palmer contends that her benefits should not be limited to the single fusion at level L4–L5, but that she should receive benefits for the entire surgery, which included spinal fusion at levels L3 through S1.

■ [¶ 15] Ms. Palmer first asserts that the hearing examiner "apportioned" her injury between the preexisting condition and her

workplace injury. She cites *Boyce v. State ex rel. Wyoming Workers' Safety & Comp. Div.*, 2005 WY 9, ¶ 11, 105 P.3d 451, 455 (Wyo.2005) for the proposition that it is improper to "apportion the aggravation between work conditions and other possible contributing factors." However, we do not read the hearing examiner's decision as apportionment. Ms. Palmer's back problems are of at least two different types—degeneration and herniation—with at least two separate causes—the preexisting condition and the work-related injury. The hearing examiner did not engage in improper apportionment when he awarded benefits for the work-related herniation and denied benefits for the preexisting degeneration.

■ [¶ 16] Ms. Palmer also seems to contend that she is entitled to more benefits because her injury aggravated her preexisting condition. She correctly contends that, when "an employee suffers from a preexisting condition, that employee may still recover if his employment substantially or materially aggravates that condition." *Ramos v. State ex rel. Wyoming Workers' Safety & Comp. Div.*, 2007 WY 85, ¶ 17, 158 P.3d 670, 676 (Wyo.2007), quoting *Boyce*, ¶ 10, 105 P.3d at 455. The record contains conflicting evidence on whether Ms. Palmer's work-related injury aggravated her preexisting condition. Dr. Narotzky opined that it did. Dr. Neal opined that it did not, and that the injury caused only temporary exacerbation of her preexisting symptoms. The hearing examiner found Dr. Neal's testimony "credible and persuasive," and made a specific finding that Ms. Palmer's injury did not aggravate or exacerbate her preexisting condition. Because Dr. Neal's testimony provided substantial evidence to support that finding, we will affirm it.

■ [¶ 17] Finally, Ms. Palmer asserts that she is entitled to benefits for the fusion at all three levels because effective treatment of her herniated disk at L4–L5 required fu-

sion not just at level L4–L5, but also at L3–L4 and at L5–S1. Ms. Palmer relies on the principle of ancillary treatment, asserting that if effective treatment of a compensable injury requires ancillary treatment for otherwise noncompensable conditions, then the worker may be entitled to benefits covering the entire course of treatment. *See State ex rel. Wyoming Workers' Compensation Div. v. Girardot*, 807 P.2d 926, 930 (Wyo.1991).[1]

■ [¶ 18] This principle is reflected in the Division's rules and regulations, which provide that "Workers with injuries compensable under the Act shall be provided reasonable and necessary health care benefits as a result of such injuries." Rules, Regulations and Fee Schedules of the Wyoming Workers' Safety and Compensation Division, Chapter 7, Section 3(a)(i). The term "medically necessary treatment" is defined to include "those health services for a compensable injury that are reasonable and necessary for the diagnosis and cure or significant relief of a condition." *Id.*, Chapter 1, Section 4(al). Thus, if ancillary treatments are reasonable and necessary to cure or relieve a compensable injury, then the worker is entitled to benefits for the ancillary treatments as well. We applied this principle in *Forni v. Pathfinder Mines*, 834 P.2d 688, 694 (Wyo.1992). Mr. Forni had suffered a work-related injury that required back surgery. We ruled that he was also entitled to benefits for "the treatments afforded for his depression and diabetes," because those treatments "were necessary, and ancillary, to his back surgery." *Id.* Other jurisdictions also recognize the ancillary treatment principle. *See, e.g., Public Service Co. v. Industrial Claim Appeals Office*, 979 P.2d 584 (Colo.Ct.App.1999) (psychiatric treatment was compensable because it was necessary to prepare the worker for surgery to treat a compensable work-related injury); *Arrowhead Press, Inc. v. Industrial Comm'n*, 134 Ariz. 21, 653 P.2d 371 (Ariz.Ct.App.1982) (treatment for bronchitis was compensable because it was neces-

---

1. The Division urges us not to consider this issue on appeal because Ms. Palmer did not raise it before the hearing examiner. *See, e.g., Perry v. State ex rel. Wyoming Workers' Safety & Comp. Div.*, 2006 WY 61, ¶ 22 n. 2, 134 P.3d 1242, 1249 n. 2 (Wyo.2006). But while she did not assert the ancillary treatment principle by that name, she did present evidence and arguments that implicitly raised this issue, and that provide us with adequate information to undertake a meaningful review of the hearing examiner's decision.

sary for the treatment of a compensable condition).

[¶ 19] In Ms. Palmer's case, Dr. Narotzky testified that he had performed a "multi-level fusion," rather than a single fusion at the L4–L5 level, because there were "degenerative changes at other levels which needed to be addressed at the time the foraminal disk herniation was addressed." He explained further:

> I think one could debate whether one needed to do the L3–4 level or not. Could she have gotten relief with just an L–4 to sacrum procedure[?] The problem is leaving a disk above a fusion where that disk is already bulging and has an annular tear is an absolute setup for that disk to herniate in the very near future if you don't do something.

Significantly, there is no evidence in the record disputing Dr. Narotzky's conclusion that treating Ms. Palmer's work-related injury at level L4–L5 required fusions at levels L3 through S1, and neither the Division nor the hearing examiner has suggested that Dr. Narotzky's testimony on this issue lacked credibility. The hearing examiner's conclusion that Ms. Palmer should be denied benefits for this ancillary treatment is not supported by substantial evidence in the record, and must be reversed. The only determination that can reasonably be reached on this record is that Ms. Palmer's benefits are not limited to the L4–L5 fusion, but include the fusions at all levels.

[¶ 20] In conclusion, we affirm the hearing examiner's decision that Ms. Palmer's foraminal herniation at level L4–L5 was a compensable, work-related injury. We also affirm his determination that the degenerative condition at levels L3–L4 and L5–S1 was preexisting and not work-related. However, the hearing examiner's decision to limit Ms. Palmer's benefits to the fusion at level L4–L5 is reversed, and this case is remanded to the district court, for further remand to the agency with instructions to award benefits to Ms. Palmer consistent with this opinion.