# IN THE SUPREME COURT, STATE OF WYOMING

## 2013 WY 95

APRIL TERM, A.D. 2013

August 12, 2013

IN THE MATTER OF THE
WORKER'S COMPENSATION
CLAIM OF:

KRISTI LEAVITT,

Appellant
(Petitioner),

v.

STATE OF WYOMING ex rel.
WYOMING WORKERS' SAFETY
AND COMPENSATION DIVISION,

Appellee
(Respondent).

S-12-0234

*Appeal from the District Court of Laramie County*
*The Honorable Thomas T.C. Campbell, Judge*

*Representing Appellant:*
>  Robert A. Nicholas, Nicholas Law Office, Cheyenne, Wyoming

*Representing Appellee:*
>  Gregory A. Phillips, Wyoming Attorney General; Michael Finn, Senior Assistant Attorney General; Jackson M. Engels, Assistant Attorney General

*Before KITE, C.J., and HILL, VOIGT, BURKE, and DAVIS, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**DAVIS**, Justice.

[¶1]    Appellant Kristi Leavitt experienced lower back pain after shoveling snow just before Christmas of 2009.  She filed a claim for benefits with the Wyoming Workers' Safety and Compensation Division, contending that her pain was causally related to a compensable back injury she had suffered in 1996.  The Division denied the claim, and the Office of Administrative Hearings (OAH) upheld that decision after holding a contested case hearing.  The district court for the First Judicial District affirmed the OAH ruling.  We affirm the district court.

## ISSUES

[¶2]    Leavitt raises four issues which we reorder and restate as follows:

> 1. Was the OAH decision contrary to law?
>
> 2.  Did the hearing examiner act arbitrarily and capriciously or abuse his discretion?
>
> 3. Were the hearing examiner's findings of fact sufficient?
>
> 4. Was the OAH decision supported by substantial evidence?

## FACTS

[¶3]    While working as a public information officer for the State of Wyoming's tourism office in February of 1996, Leavitt escorted ten journalists to various stops along the route of a ten-day dogsled race in western Wyoming.  The trip required her to drive approximately 2,000 miles and to load and unload her passengers' heavy winter luggage at eight or nine hotels along the route.  Midway through the trip, Leavitt began to experience unrelenting back pain.

[¶4]    When she returned to Cheyenne, she sought chiropractic care for her pain.  After approximately a week of unsuccessful treatment, Leavitt's chiropractor referred her to Dr. Vincent Ross, a family practitioner with a certificate of additional qualification in sports medicine.  Dr. Ross provided pain medication and physical therapy.  Conservative treatment by both practitioners provided Leavitt little relief, and an MRI was ordered.  The study revealed a herniated disc at the L5-S1 level of the lower back.  Dr. Carlton Reckling, an orthopedic surgeon, performed a partial discectomy (disc removal) and decompression on March 20, 1996.

[¶5]    After recuperating from the surgery, Leavitt began a roughly nine-month course of post-operative rehabilitation managed by Dr. Ross and provided by his office.  She

experienced marked gains in strength and flexibility, as well as a marked decrease in pain and discomfort. She was soon able to adequately control her pain with Ibuprofen, even though her job duties required her to fly frequently and to travel long distances by automobile. Dr. Ross' post-surgical care of Leavitt ended on February 24, 1997.

[¶6] Leavitt's back required little medical attention between 1997 and 2010. She saw Dr. Ross in August of 1999 for treatment of a primary complaint unrelated to her back injury. Dr. Ross' chart for this visit is not in the record, but there is a note from Leavitt to the Division with a copy of another note written by Dr. Ross on a prescription form. Dr. Ross' note indicates that Leavitt had some low back pain on the date of the visit and needed pain medication. Leavitt's note says that Dr. Ross would not be sending a bill to the Division because he was not treating her for her back during the visit in question, but that she would like to be reimbursed for the cost of prescription Celebrex (a non-steroidal anti-inflammatory drug used to treat osteoarthritis) and Ibuprofen based on his conclusion that she needed pain medications.

[¶7] In 2001, Leavitt saw physical medicine and pain management specialist Dr. John Vallin in Bozeman, Montana. Dr. Vallin noted that Leavitt's gait was non-antalgic (the stance phase of her gait was not abnormally short compared to the swing phase), that her lumbar range of motion was within normal limits, and that she had excellent overall spinal range of motion. He found early spondylosis (degenerative osteoarthritis in the joints or neuroforamina of the spine) with some bone spurring at the fifth and what appeared to be sacralization of the sixth lumbar vertebrae. This was the area in which the 1996 surgery had been performed.

[¶8] Dr. Vallin prescribed or renewed a prescription for Celebrex, and diagnosed Leavitt with chronic mechanical low back pain without lumbar radiculopathy (compression of spinal nerves). The bills for the 1999 and 2001 care by Drs. Ross and Vallin were the last Leavitt submitted to the Division until early in 2010.

[¶9] Leavitt consulted with chiropractors from April of 2007 through early December of 2009. Her complaints during this time related to popping in her left hip after sitting for long periods, achy joints that run in her family, periodic migraines, bilateral lower back stiffness, pain in the lower ball of her left foot, tightness between her shoulder blades, temporomandibular joint (jaw) pain, right elbow pain, right shoulder pain, lower back catching when bending over, bilateral pain in the buttocks and a knot in her right shoulder. She saw one chiropractor for complaints related to miscarriages as well as a variety of complaints similar to those just listed. Although according to the chiropractic records Leavitt did complain of some back pain during this time frame, she did not relate her back complaints to the 1996 work-related injury, and did not submit any of the bills for the treatment rendered to the Division.

2

[¶10] Dr. Ross continued to see Leavitt between 2005 and 2009. She was treated for knee complaints related to a cyst under a kneecap, for a ganglion cyst in the wrist, for a sore throat and cough, and for chondromalacia (inflammation of the underside of the kneecap) and arthritis in both knees. Although the medical records for the treatment rendered during this time frame are not in the administrative record, Dr. Ross' deposition testimony does not reflect any complaints of back pain during these visits.

[¶11] Leavitt began to experience significant lower back pain after shoveling snow on December 22, 2009, and she therefore made an appointment with Dr. Ross on December 31 of that year. On examination, he found spasm in the lumbar area and diagnosed a lumbar strain. His records reflect his conclusion that Leavitt's pain at the time was just a "continuation" of her 1996 injury rather than the result of shoveling snow. Dr. Ross's notes for that visit do not indicate that the pain began when Leavitt was shoveling snow, although they indicate that her chief complaint was that she had "reaggravated" her back. Dr. Ross did not order any radiographic studies. Leavitt was subsequently treated with physical therapy provided by a therapist employed by Dr. Ross' office, and she also received some chiropractic treatment.

[¶12] Leavitt attempted to reopen her 1996 worker's compensation case to obtain payment for treatment of her recent back pain. The Division declined to reopen the case and denied her claim for benefits under Wyo. Stat. Ann. § 27-14-605 (LexisNexis 2013) because more than four years had elapsed since she last sought benefits for her 1996 injury, and because she had failed to show that her current "lumbar sprain and muscle spasm due to shoveling snow" was directly related to the 1996 injury. Leavitt timely requested and received a hearing before the Office of Administrative Hearings.

[¶13] The hearing examiner assigned by the OAH received Leavitt's testimony, medical records selected by the parties, and Dr. Ross' testimony by deposition. He found that Leavitt's original injury involved orthopedic and/or neurological issues, and he noted that Dr. Ross' credentials did not include expertise in those specialties. The examiner found it significant that Dr. Ross did not seem to be aware of Leavitt's extensive history of chiropractic treatment between her recovery from the work-related injury and the snow-shoveling incident, and that few complaints of back pain were reflected in that record. He also noted that Dr. Ross had not treated Leavitt for back pain between 1999 and the end of 2009. The hearing examiner observed that Dr. Ross ordered no objective diagnostic tests to isolate the source of Leavitt's back pain after the snow-shoveling incident. He also found Dr. Ross' testimony to be generally equivocal and unresponsive.

[¶14] The examiner determined that the record contained evidence of other causes of back pain besides aggravation of the original compensable injury. He concluded that the medical testimony established that arthritis not shown to be related to the original compensable injury may have played a role, and that shoveling snow often results in back pain even in those without any significant back problems. He found that Dr. Ross was

3

speculating when he opined that Leavitt's current back problems were related to her compensable workplace injury in 1996 based upon the absence of any meaningful diagnostic information and the absence of testimony which ruled out possible alternative causes.

[¶15]  The hearing examiner ultimately concluded that Leavitt had not carried her burden of proving by a preponderance of the evidence that the pain experienced after shoveling snow in 2009 was causally related to the thirteen-year-old injury.  He therefore upheld the Division's denial of benefits.

[¶16]  Leavitt then petitioned the district court for review of the OAH decision. Although that court took issue with some of the hearing examiner's findings relating to Dr. Ross' credibility, it concluded that his decision to disregard much of Dr. Ross' medical testimony was supported by the record.  The court also found that there was substantial evidence to support the conclusion that the doctor's opinion regarding the relationship between Leavitt's 1996 injury and her most recent complaints was not only equivocal and speculative, but that it also rested in part on his lack of familiarity with a considerable portion of her medical history.  Leavitt timely appealed the district court's decision.

**STANDARD OF REVIEW**

[¶17]  In an appeal from a district court's review of an administrative decision, this Court reviews the case as if it had come directly from the administrative body, affording no special deference to the district court's decision.  *Stallman v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2013 WY 28, ¶ 27, 297 P.3d 82, 89 (Wyo. 2013); *Deloge v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2011 WY 154, ¶ 5, 264 P.3d 28, 30 (Wyo. 2011).  In accordance with Wyo. Stat. Ann. § 16-3-114(c)(ii)(E) (LexisNexis 2013), we review an agency's findings of fact by applying the substantial evidence standard. *Jacobs v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2013 WY 62, ¶ 8, 301 P.3d 137, 141 (Wyo. 2013); *Dale v. S & S Builders, LLC*, 2008 WY 84, ¶ 22, 188 P.3d 554, 561 (Wyo. 2008).  Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion.  *Jacobs*, ¶ 8, 301 P.3d at 141; *Bush v. State ex rel. Workers' Comp. Div.*, 2005 WY 120, ¶ 5, 120 P.3d 176, 179 (Wyo. 2005). "Findings of fact are supported by substantial evidence if, from the evidence preserved in the record, we can discern a rational premise for those findings."  *Kenyon v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2011 WY 14, ¶ 11, 247 P.3d 845, 849 (Wyo. 2011).

[¶18]  Where a hearing examiner determines that a claimant has failed to carry her burden of proof, this Court must decide whether that determination was contrary to the overwhelming weight of the evidence.  *Jacobs*, ¶ 8, 301 P.3d at 141; *Hoffman v. State ex rel. Wyo. Workers' Safety & Comp. Div.,* 2012 WY 164, ¶ 7, 291 P.3d 297, 301 (Wyo. 2012).  We defer to the agency's (or the hearing examiner's) determination of witness

4

credibility unless it is clearly contrary to the overwhelming weight of the evidence. *Willey v. State ex rel. Wyoming Workers' Safety & Comp. Div.*, 2012 WY 144, ¶ 20, 288 P.3d 418, 427 (Wyo. 2012) (quoting *Beall v. Sky Blue Enters.*, 2012 WY 38, ¶ 28, 271 P.3d 1022, 1034 (Wyo. 2012)).

[¶19] We apply the arbitrary and capricious standard of review as a "safety net" to catch agency action which prejudices a party's substantial rights or is contrary to other standards of review under Wyoming's Administrative Procedures Act, but which is not easily categorized or subject to a particular standard. *Jacobs*, ¶ 9, 301 P.3d at 141. "The arbitrary and capricious standard applies if the agency failed to admit testimony or other evidence that was clearly admissible, or failed to provide appropriate findings of fact or conclusions of law." *Id.* "We review an agency's conclusions of law *de novo,* and will affirm only if the agency's conclusions are in accordance with the law." *Kenyon*, ¶ 13, 247 P.3d at 849.

## DISCUSSION

[¶20] Leavitt first contends that the OAH hearing examiner erred as a matter of law when he disregarded the only expert medical causation testimony presented at the contested case hearing, that of Dr. Ross. That contention cannot be squared with our prior rulings. We have held that an agency may disregard evidence, including expert testimony, if it explains its reasons for doing so based upon witness credibility or other factors which can be found in the record, and if it could reasonably conclude as it did based on all of the evidence before it. *Hoffman*, ¶ 7, 291 P.3d at 301; *Davenport v. State ex rel. Wyo. Workers' Safety & Comp. Div.,* 2012 WY 6, ¶ 12, 268 P.3d 1038, 1041-42 (Wyo. 2012).

[¶21] A hearing examiner is not bound to accept and may disregard testimony which is not contradicted by an opposing expert if the circumstances of a case render it less than credible, or if that testimony is evasive, equivocal, confused, "clouded with uncertainty and improbability, or otherwise . . . unreliable or unworthy of belief." *David v. State ex rel. Wyo. Workers' Safety & Comp. Div.,* 2007 WY 22, ¶ 15, 151 P.3d 280, 290 (Wyo. 2007). In addition, a hearing examiner may disregard a medical expert's opinion if it is unreasonable, inadequately supported by the facts upon which it purportedly rests, or based upon an incomplete or inaccurate medical history. *Middlemass v. State ex rel. Wyo. Workers' Safety & Comp. Div.,* 2011 WY 118, ¶ 29, 259 P.3d 1161, 1168 (Wyo. 2011).

[¶22] The hearing examiner adequately identified the evidence that led him to disregard Dr. Ross' testimony. Leavitt is correct in her assertion that Dr. Ross related Leavitt's current back problems to the original compensable injury to a reasonable degree of medical probability at more than one point in his testimony. However, he was unaware that between 2001 and 2009 there was a significant period of time in which there was

little or no treatment for lower back pain, and that her chiropractors' records showed few treatments for that complaint between 2007 and 2009. Those records reflected many treatments for shoulder, upper back, neck, and arm pain that Leavitt attributed to remodeling work on her house, riding her bicycle a lot, and an uncomfortable bed. The fact that those records do not contain many complaints of back pain supports the conclusion that there was a hiatus between the symptoms caused by the original injury and surgery and those which resulted from the snow-shoveling incident.

[¶23] Although the Court is aware that radiographic studies and other testing may not reveal the existence or the cause of a soft tissue injury like a lumbar strain, Dr. Ross did not order radiographic or other testing that might have provided him with some information, such as the existence of osteophytes or bone spurs, to provide an objective basis for his causation opinion. The hearing examiner found the absence of such studies to be another factor undermining Dr. Ross' opinion.

[¶24] Finally, Dr. Ross conceded that nine or ten different things might have caused Leavitt's most recent pain, and that they could have been the result of the muscle strain that often accompanies shoveling snow even in persons with no back pathology. He did not rule out alternative causes but simply testified that he believed Leavitt's current complaints were the result of aggravation of the original injury without an adequate explanation as to how that particular cause could be ruled in when a person with a "normal" back might suffer the same kind of strain from shoveling snow.

[¶25] The doctor's opinion rested on his observation that the 1996 and 2009 incidents produced similar symptoms and his belief that discectomies are often followed by degenerative changes that can trigger pain after periods of physical activity. Notwithstanding his concessions that Leavitt's pain could have been caused by a variety of factors not related to her original injury, he repeatedly retreated to the latter theme under questioning.

[¶26] The hearing examiner could reasonably conclude as he did that Dr. Ross' generalizations regarding outcomes of discectomies did not reflect a sound medical basis for the conclusions reached in this particular case. He concluded that Leavitt had a long period with few back pain complaints after her 1996 surgery, that she had engaged in an activity that Dr. Ross conceded could cause the lumbar strain he diagnosed, and that Dr. Ross' testimony did not establish that she would not have strained her lower back if she had not had the compensable injury and discectomy years before. As noted above, we defer to a hearing examiner's findings of fact unless they are clearly contrary to the overwhelming weight of the evidence. *Willey*, ¶ 20, 288 P.3d at 427 (citing *Beall*, ¶ 28, 271 P.3d at 1034). We therefore conclude after an independent review of the record that the hearing examiner did not err and could reasonably have decided to disregard Dr. Ross' testimony.

6

[¶27]  Leavitt also asks this Court to evaluate the OAH's decision pursuant to our "arbitrary and capricious" standard of review due to the hearing examiner's alleged failure to make sufficient findings of fact.  She asserts that the hearing examiner should have made express findings on questions such as whether Leavitt shoveled only a "little bit of snow" at her house, whether she took small scoops of snow, when her severe pain started in relation to shoveling, and whether she believed that she might need additional back surgery in late 2009 (which might bear on her motivation to claim a causal connection to the original injury).

[¶28]  We have held that the "arbitrary and capricious" standard of review is a "safety net" to which we resort when challenged agency action cannot be easily categorized or easily fit to any of the other review standards set out in Wyoming's Administrative Procedures Act.   The alleged failure of a hearing examiner or body to provide sufficient findings of fact may be reviewed under this standard.  *Exxon Mobil Corp.  v. Wyo. Oil & Gas Conservation Comm'n*, 2013 WY 32, ¶ 23, 297 P.3d 782, 788 (Wyo. 2013).

[¶29]  We have never held that a hearing examiner's decision must contain findings specifying a decision as to every fact in dispute.  We have only required that such an order contain the basic findings of fact upon which the hearing examiner based his ultimate conclusions relating to "material issues in the proceeding."  *Id.*, ¶ 26, 297 P.3d at 788.  The findings must be sufficient to permit us to determine whether the agency decision was supported by substantial evidence and was otherwise reasonable.  *Id.*, ¶ 26, 297 P.3d at 788-89.

[¶30]  The hearing examiner concluded that Leavitt had not carried the burden of demonstrating that the back pain she experienced in late December of 2009 was causally related to her compensable injury in 1996.  He was required to determine and set out those facts that were material to that conclusion, which he did.  We have summarized the pertinent facts above and find them to be adequate to support the decision rendered.  We therefore reject the claim that the OAH ruling was arbitrary and capricious due to inadequate findings of fact.

[¶31]  Finally, Leavitt argues that the agency decision was not supported by substantial evidence.  After conducting an independent review of the record, we conclude that the hearing examiner's conclusion that Leavitt simply did not prove her case was not contrary to the overwhelming weight of the evidence.

[¶32]  We review to determine whether the record as a whole contains relevant evidence that a reasonable mind might accept as adequate to rationally support the hearing examiner's conclusion.  *Jacobs*, ¶ 8, 301 P.3d at 141; *Kenyon*, ¶ 11, 247 P.3d at 849.  Stated another way, this Court must be able to conclude that the agency decision was not contrary to the overwhelming weight of the record evidence as a whole.  *Jacobs*, ¶ 8, 301 P.3d at 141; *Hoffman*, ¶ 7, 291 P.3d at 301.  We need not determine that each and every

finding of fact had a reasonable evidentiary basis, but only that those necessary to support the decision were so supported. We have adequately discussed the facts supporting the hearing examiner's decision.

[¶33] We agree with the district court that some of the findings the OAH made are unsupportable. Among these are the following:

- That Dr. Ross had testified, while discussing his efforts to manage back pain without surgery, that he would perform a surgery if Leavitt needed one. The examiner found this bore on his credibility because Dr. Ross is not a surgeon, and he could not of course have performed the surgery. However, as the district court concluded, the context of that portion of Dr. Ross' testimony meant that he would refer a patient to a surgeon if he found certain conditions to exist. The examiner's finding to the contrary was not supported by the evidence.

- That Leavitt's counsel had showed his outline to Dr. Ross during his deposition to influence his testimony or to coach him. The deposition clearly reflects that counsel stated that he needed a moment to refer to his outline to formulate a question about the dates of certain specific treatment, which he did. The hearing examiner's finding in this respect was not only unreasonable but also unfair to counsel, who, as far as we can tell, was never provided an opportunity to respond to those accusations.

- That Dr. Ross acted with an eye towards compensation for an aggravation of a preexisting condition rather than establishing the actual cause of Leavitt's complaints, which the examiner evidently believed bore on his credibility. The record does not support this finding. It is speculation.

[¶34] The above findings set a tone which concerns the Court when they are found in the decision of a quasi-judicial officer. Nevertheless, as we noted above, the evidence in the record and the hearing officer's findings of fact as a whole provide adequate support for the decision to disregard Dr. Ross' opinion as to the causation of Leavitt's back pain and to affirm the Division's determination. Both the OAH and the district court reasonably concluded from the record that the doctor's testimony was equivocal and largely speculative, and that it could not be squared with his concession that a number of factors could have caused Leavitt to experience pain after shoveling snow even if she had not injured her back thirteen years earlier. The conclusion that Leavitt failed to carry her burden of showing that the pain experienced after shoveling snow in 2009 was related to her compensable injury in 1996 was not contrary to the overwhelming weight of the evidence before the hearing examiner.

**CONCLUSION**

8

[¶35]   We have determined that the OAH hearing examiner did not err as a matter of law when he disregarded Dr. Ross' opinion as the cause of Leavitt's injuries, that the hearing examiner's findings of fact were sufficient, and that his decision was not contrary to the weight of the evidence even though certain findings not essential to the decision were incorrect.  We therefore affirm the Opinion and Order of the district court.