# IN THE SUPREME COURT, STATE OF WYOMING

## 2015 WY 14

**OCTOBER TERM, A.D. 2014**

**January 28, 2015**

IN THE MATTER OF THE WORKER'S
COMPENSATION CLAIM OF:

WANDA NEWMAN,

Appellant
(Petitioner),

v.                                                              S-14-0098

STATE OF WYOMING, ex rel., DEPARTMENT
OF WORKFORCE SERVICES, WORKERS'
SAFETY AND COMPENSATION DIVISION,

Appellee
(Respondent).

*Appeal from the District Court of Lincoln County*
*The Honorable Dennis L. Sanderson, Judge*

*Representing Appellant:*

> *F. Gaston Gosar, F. Gaston Gosar, P.C., Pinedale, Wyoming.*

*Representing Appellee:*

> *Peter K. Michael, Attorney General; John D. Rossetti, Deputy Attorney General; Michael J. Finn, Senior Assistant Attorney General; Samantha Caselli, Assistant Attorney General.*

*Before BURKE, C.J., and HILL, KITE, DAVIS, and FOX, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BURKE, Chief Justice.**

[¶1]    Appellant, Wanda Newman, appeals the district court's affirmation of an order from the Office of Administrative Hearings upholding a determination by the Wyoming Workers' Safety and Compensation Division denying her medical and temporary disability benefits.  She claims the hearing examiner's decision to uphold the Division's determination is unsupported by substantial evidence and is arbitrary, capricious, and not in accordance with law.  We will affirm.

## ISSUES

[¶2]    Ms. Newman presents two issues, which we have reworded for clarity:

> 1.    Whether the hearing examiner's decision to deny benefits is supported by substantial evidence.
>
> 2.    Whether the hearing examiner's decision to deny benefits is arbitrary, capricious, and not in accordance with law.

## FACTS

[¶3]    On December 19, 2008, Ms. Newman, while working as the municipal court judge for the town of Diamondville, Wyoming, slipped and fell on the icy outdoor steps of the town hall.  She sought medical treatment for her injuries, complaining particularly of pain in her left knee and lumbar spine.  The treating physician gave her pain medication and told her to return in seven to ten days if she did not improve.  Conservative treatment failed to resolve her lower back pain, and she was referred to an orthopedic surgeon, Dr. Mary C. Neal.  Dr. Neal recommended "an L5-S1 microdiscectomy with fusion and stabilization."  Dr. Neal performed the surgery on Ms. Newman on September 25, 2009.  The Division gave preauthorization approval, and paid for this surgery and related medical costs, along with temporary disability benefits.

[¶4]    Soon after the surgery, Ms. Newman reported to Dr. Neal that she was doing better, although she was still suffering some pain.  Dr. Neal felt the symptoms that led to the surgery were "gone."  However, from late in 2009 to early in 2010, Ms. Newman reported a sudden increase in her lower back pain.  Dr. Neal suspected a "delayed union," meaning that "the bone graft is not incorporating or becoming solid as quickly as would be typical."  She continued monitoring Ms. Newman's condition, and in October of 2010, Ms. Newman reported that the pain was approximately 50% improved.

[¶5]    On June 18, 2011, Ms. Newman experienced acute onset of pain in her lower back and left leg when she bent over in the shower.  She was admitted to the hospital for pain

1

management and further evaluation. A CT scan revealed narrowing of the L4-5 disk space and a disk bulge at that location, above the level of her previous back surgery. Dr. Neal performed another surgery in which she removed the bulging disk and fused the joint. Dr. Neal also revised some of the previous work done at the L5-S1 level to treat the likely delayed union at that level.[1]

[¶6]    The Division denied coverage for Ms. Newman's second surgery, and also denied her application for temporary total disability benefits, on the basis that "the recent need for low back surgery is not directly related to the work injury, therefore, the need for lost time, at work is not due to a work injury." Ms. Newman objected to the Division's determinations, and the matter was referred to the Office of Administrative Hearings.

[¶7]    Following a contested case hearing, the hearing examiner determined that Ms. Newman had not proven that the herniated disk at L4-5 diagnosed in 2011 was causally related to her slip and fall on December 19, 2008. Ms. Newman appealed this decision to the district court, which affirmed it. Ms. Newman timely filed this appeal.

## STANDARD OF REVIEW

[¶8]    When we consider an appeal from a district court's review of an administrative agency's decision, we review the case as though it had come directly from the administrative agency. *CalCon Mut. Mortg. Corp. v. State ex rel. Wyo. Dep't of Audit*, 2014 WY 56, ¶ 6, 323 P.3d 1098, 1101 (Wyo. 2014) (citing *State ex rel. Dep't of Family Services v. Kisling*, 2013 WY 91, ¶ 8, 305 P.3d 1157, 1159 (Wyo. 2013)). Review of an administrative agency's action is governed by the Wyoming Administrative Procedure Act, which provides that we hold unlawful and set aside agency action, findings and conclusions found to be:

---

[1] At the hearing, Ms. Newman's counsel argued that her surgery expenses might be compensable under the ancillary treatment rule. In her order, the hearing examiner explained why that rule does not apply:

> It is noted that during that second surgery there was some additional treatment to the work related injury, *i.e.*, the L5-S1 fusion[;] however that was ancillary to the treatment of the non work related injury and does not make the surgery compensable. While [Ms.] Newman's counsel referred to the ancillary treatment rule set forth in *In the Matter of the Worker's Compensation Claim of Palmer*, 2008 WY 105, 192 P.3d 125, that rule applies when treatment of a compensable injury requires ancillary treatment of non work related injuries, not the reverse which is the case here.

On appeal, Ms. Newman has not challenged this aspect of the hearing examiner's decision.

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

(B) Contrary to constitutional right, power, privilege or immunity;

(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

(D) Without observance of procedure required by law; or

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

Wyo. Stat. Ann. § 16-3-114(c)(ii) (LexisNexis 2013).

[¶9]     Pursuant to this statute, we review an administrative agency's findings of fact using the substantial evidence test. *Dale v. S & S Builders, LLC*, 2008 WY 84, ¶ 22, 188 P.3d 554, 561 (Wyo. 2008).    Substantial evidence is relevant evidence which a reasonable mind might accept in support of the agency's decision. *Id.*, ¶ 11, 188 P.3d at 558.   Findings of fact are supported by substantial evidence if, from the evidence in the record, this Court can discern a rational premise for the agency's findings. *Middlemass v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2011 WY 118, ¶ 11, 259 P.3d 1161, 1164 (Wyo. 2011).   We defer to the hearing examiner's determination of witness credibility unless it is clearly contrary to the overwhelming weight of the evidence. *Leavitt v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2013 WY 95, ¶ 18, 307 P.3d 835, 840 (Wyo. 2013).   As always, we review an agency's conclusions of law *de novo*, and "'[w]e will affirm an agency's legal conclusion only if it is in accordance with the law.'" *Dale*, ¶ 26, 188 P.3d at 561-62 (quoting *Diamond B Services, Inc. v. Rohde*, 2005 WY 130, ¶ 12, 120 P.3d 1031, 1038 (Wyo. 2005)).

## *DISCUSSION*

[¶10] To receive compensation under the Wyoming Worker's Compensation Act, an employee must prove that her injury is one "arising out of and in the course of employment." Wyo. Stat. Ann. § 27-14-102(a)(xi) (LexisNexis 2011).

> A claimant in a worker's compensation case has the burden of proving all of the elements of the claim by a preponderance of the evidence. *Mitcheson v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2012 WY 74, ¶ 11, 277 P.3d 725, 730 (Wyo. 2012).   As part of that burden, the claimant must prove a

3

causal connection exists between a work-related injury and the injury for which workers' compensation benefits are sought. *Id*.

*Landwehr v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2014 WY 25, ¶ 14, 318 P.3d 813, 819 (Wyo. 2014).

[¶11]  It is undisputed that the injury to Ms. Newman's back at the L5-S1 level arose out of the fall she experienced in the course of her employment.  The dispute is whether the injury she suffered at the L4-5 level was also causally related to that work accident.  At the hearing on this issue, the hearing examiner admitted the deposition testimony of three medical doctors.

[¶12]  Dr. Neal, who was Ms. Newman's treating physician, testified that in her opinion, the injury at the L4-5 level was a result of her previous surgery, which in turn was necessary because of her work-related injury.  Asked her opinion of "whether Ms. Newman's herniated L4-L5 disk[2] is likely related to her previous fusion," she replied:

> I think it's directly related.  Whether an adjacent segment fusion increases the likelihood of the adjacent disk to degenerate I think is open for discussion.  Having said that, we do know that a fusion does change the biomechanics of the adjacent disk.  And Wanda Newman's L4-5 disk problem was not that of degeneration.  Her problem was that she blew out her disk.  She had a very large disk herniation.  And that's different from adjacent segment degeneration.  I think that her fusion and the change of biomechanics did put her at increased risk and she did have a big disk herniation.  So I do think it's directly related.

[¶13]  Dr. Paul Ruttle, who did an independent medical evaluation of Ms. Newman at the request of the Division, disagreed with Dr. Neal.  Based on his review of her medical records, he stated that Ms. Newman "had, of course, from the history, a long, long history of low back pain."  Dr. Ruttle testified that imaging studies showed there were degenerative changes to Ms. Newman's spine "throughout the entire lumbar," and that these changes were present "long before she had the [first] fusion in September of 2009."  Asked about Dr. Neal's opinion that the L5-S1 fusion caused the subsequent injury at the

---

[2] Two different spellings – "disc" and "disk" – are found in the record.  Both variants are correct, so instead of resolving the inconsistency, we will generally use the same spelling as the record source.

L4-5 level, he acknowledged "a theory that has been out there in the orthopedic neural surgical literature for a while" that when disks are fused at one level, "that increases the forces on the disks around it." However, he specifically testified that he did not believe Ms. Newman suffered from an adjacent disk problem. Instead, he attributed Ms. Newman's injury at the L4-5 level to "pre-existing degenerative changes in the lumbar spine."

[¶14] Dr. Michael Kaplan evaluated Ms. Newman for an impairment rating after the first surgery but before the second. He did not offer an opinion as to the causation of the L4-5 injury. However, he provided another explanation of the "adjacent segment breakdown" to which Dr. Neal attributed Ms. Newman's herniation at the L4-5 level. He did not say whether he agreed with Dr. Neal's opinion. He also testified that MRI imaging of Ms. Newman's back prior to her first surgery revealed "disk desiccation or disk degeneration with some bulging, not only at L4-5 which is above the [L5-S1] fusion, but even at L3-4. . . . There already was some degeneration above the fusion before the surgery."

[¶15] The order issued by the hearing examiner reflects a thorough and thoughtful review of the evidence, including these observations about the medical opinions:

> 109. When the Office gave consideration to Dr. Neal's opinion in comparison to Dr. Ruttle's, the Office found Dr. Ruttle's to be more persuasive. Dr. Neal may have more recent and extensive experience than Dr. Ruttle, but it appeared to this Office that all the doctors were qualified. The Office has some concerns about Dr. Ruttle's credibility in that he seems to jump to conclusions about the claimant's credibility and he also seems to look for evidence to support his conclusion as opposed to looking at both sides of the picture. Nevertheless Dr. Ruttle did appear to do a more thorough analysis of the matter. Further, although Dr. Kaplan was not asked his opinion on causation, his comments about the preexisting condition seemed to support Dr. Ruttle's opinion.
>
> 110. In the long run, the Office was more persuaded by the lack of sufficient explanation for Dr. Neal's opinions than the foundation for Dr. Ruttle's opinions. More particularly it appeared to the Office that Dr. Neal just assumed that because there was a change in the biomechanics of the L5-S1 it automatically followed that it caused the herniation at L4-5. She did not give any consideration to the diagnostic studies that showed that up until June of 2011 there was evidence of

5

bulging but apparently no change in that condition after the fusion until June of 2011. She did not explain why it would take 20 months after the change in biomechanics for the herniation to occur and why no evidence of additional damage to the L4-5 disc was found on the January 2011 MRI or CT scan if the fusion was causing problems.

111. Accordingly, this Office finds that [Ms.] Newman failed to prove that her December 2008 work related injury and the subsequent September 2009 surgery caused the injury to the L4-5 disc in 2011 or necessitated the surgery for that injury.

[¶16] On appeal, Ms. Newman asserts that the hearing examiner relied "on three factors to find Dr. Ruttle's opinion more persuasive than Dr. Neal's opinion: (1) Dr. Ruttle did a more thorough analysis of the matter; (2) Dr. Kaplan's comments about pre-existing conditions seemed to support Dr. Ruttle's opinion; and (3) Dr. Neal's lack of sufficient explanation for her opinion." Ms. Newman contends that these factors are not supported by substantial evidence. Our review of the record on appeal, however, reveals that there is substantial evidence to support the hearing examiner's decision.

[¶17] Dr. Ruttle's review of Ms. Newman's medical history was extensive. He reviewed records indicating that she had seen a doctor in 1996 for severe back pain, with follow-up treatments extending into 1997. Between 1999 and 2001, she sought chiropractic treatments for back pain on five occasions. Another chiropractor treated her from 2001 to 2008 for ongoing complaints of back pain. In 2008, Ms. Newman suffered the work-related injury that led to her first surgery.

[¶18] Dr. Neal's testimony was much less thorough with regard to Ms. Newman's medical history. Her testimony covered the period from Ms. Newman's first visit in 2009 through her post-operative recovery following the second surgery in 2011. This contrast between the two doctors' testimony supports the hearing examiner's statement that Dr. Ruttle's analysis was more thorough.

[¶19] In her brief, Ms. Newman suggests that Dr. Ruttle's analysis was less thorough because he misread certain MRI and CT scans. This argument goes to the credibility and persuasiveness of Dr. Ruttle's testimony, not the thoroughness of his analysis. As noted above, we defer to the hearing examiner's determination of witness credibility. *Leavitt*, ¶ 18, 307 P.3d at 840. On appeal, our task is not to reweigh the evidence, but to determine whether there is substantial evidence to support the hearing examiner's decision.

[¶20] Ms. Newman's next assertion is that there is not substantial evidence to support the hearing examiner's finding that Dr. Kaplan's testimony about pre-existing conditions

supported Dr. Ruttle's. We find sufficient evidence in the record to support this finding. As quoted above, Dr. Kaplan testified that Ms. Newman suffered degeneration of her spine at the L4-5 level even before the surgery at the L5-S1 level. This evidence provides support for Dr. Ruttle's opinion that the herniation at the L4-5 level of Ms. Newman's back was due to degeneration rather than adjacent segment breakdown.

[¶21] Third, Ms. Newman challenges the hearing examiner's determination that Dr. Neal did not provide sufficient explanation for her opinion. Once again, we find substantial evidence in the record to support this decision. Specifically, the hearing examiner found that Dr. Neal did not give adequate consideration to the diagnostic studies showing bulging at the L4-5 level prior to Ms. Newman's first surgery. Review of Dr. Neal's testimony confirms that she did not discuss these diagnostic studies. Both Dr. Ruttle and Dr. Kaplan discussed them in much more detail.

[¶22] The hearing examiner also found that Dr. Neal did not explain why it would take 20 months after the L5-S1 fusion for the herniation to occur at the L4-5 level. Review of Dr. Neal's testimony confirms that she did not provide any such explanation. In the order, the hearing examiner explained the significance of this lack of explanation. With regard to the adjacent disk problem, Dr. Kaplan explained that "[i]f it's a pretty large protrusion or herniation of [the] disk in a short period of time after a fusion, we might have to say that [the] adjacent segment was stressed post-fusion." The hearing examiner noted that Ms. Newman's herniation at the L4-5 level "did not however occur within a **short period of time from the [first] fusion** – rather it was twenty months after the [first] fusion that the herniation suddenly occurred." (Emphasis in original.) The hearing examiner's finding that Dr. Neal failed to explain why the herniation at the L4-5 level occurred after this length of time is supported by substantial evidence in the record.

[¶23] Ms. Newman raises several other arguments in connection with the first issue. She points to Dr. Ruttle's comment that, because of her genetics and other factors, the degeneration of her lower back was inevitable, and asserts that Wyoming has rejected the "inevitability of injury" rule as a basis for denying compensation. As stated in *Judd v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2010 WY 85, ¶ 39, 233 P.3d 956, 971 (Wyo. 2010):

> We have rejected the inevitability of injury or surgery as a basis to deny compensation. *See Straube* [*v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2009 WY 66], ¶ 17, 208 P.3d [41,] 48 [(Wyo. 2009)] (holding employer takes an employee as he finds him and it is not material that injury could have occurred at anytime); *State ex rel. Wyo. Workers' Comp. Div. v. Roggenbuck,* 938 P.2d 851, 853 (Wyo. 1997) (holding surgery to treat preexisting condition compensable where

7

"work effort brought the need for surgery to a head and forced the surgery to be done at this time").

However, the cited cases stand for the proposition that, even if an injury or condition is "inevitable" because of the worker's pre-existing condition, the worker may still be compensated when a work injury hastens the "inevitable" injury or makes it worse than it otherwise would have been. While Dr. Ruttle said that Ms. Newman's problem was inevitable, he also made it clear that, in his opinion, degeneration was the cause of the problem, and that process was not hastened or aggravated by the previous work injury.

[¶24] Ms. Newman summarizes her argument on the first issue by concluding that, "In sum, the hearing examiner's decision to rely on Dr. Ruttle's opinion to deny benefits is not supported by substantial evidence at hearing. . . . Dr. Ruttle's opinion should not be given the weight placed [on it] by the hearing examiner." This underscores the fact that Ms. Newman's argument, at its core, is a challenge to the credibility and persuasiveness of Dr. Ruttle's testimony. We note again that we defer to the hearing examiner's determination of witness credibility. *Leavitt*, ¶ 18, 307 P.3d at 840. This is particularly so when, as in this case, the order reflects careful consideration of the witnesses' credibility and an explanation of the factors weighed by the hearing examiner. As we set forth in *Dale*, ¶ 22, 188 P.3d at 561, "If, in the course of its decision making process, the agency disregards certain evidence and explains its reasons for doing so based upon determinations of credibility or other factors contained in the record, its decision will be sustainable under the substantial evidence test." Having reviewed the record on appeal, we find that substantial evidence supports the hearing examiner's decision to rely more heavily on Dr. Ruttle's opinion than on Dr. Neal's.

[¶25] In Ms. Newman's second issue, she claims that the decision to deny her benefits is arbitrary, capricious, and not in accordance with law because the hearing examiner misapplied the second compensable injury rule.

> The "second compensable injury" rule applies "when an initial compensable injury ripens into a condition requiring additional medical intervention." *Hoffman v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2012 WY 164, ¶ 9, 291 P.3d 297, 301 (Wyo. 2012) (quoting *Rogers v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2012 WY 117, ¶ 14, 284 P.3d 815, 819 (Wyo. 2012)). "Under the second compensable injury rule, a subsequent injury or condition is compensable if it is causally related to the initial compensable injury." *Hoffman*, ¶ 9, 291 P.3d at 301. We have noted that "the burden of proof for a second compensable injury is no different than the burden applied to all claimants to show the causal connection between their injuries and their work."

*Kenyon* [*v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2011 WY 14], ¶ 22, 247 P.3d [845,] 852 [(Wyo. 2011)]. Accordingly, Mr. Trump's burden of proof with respect to causation remained the same regardless of whether the second compensable injury rule was applied.

*Trump v. State*, 2013 WY 140, ¶ 21 n.2, 312 P.3d 802, 809 n.2 (Wyo. 2013). Ms. Newman contends that Dr. Neal's opinion "satisfies the causal connection between the work injury and the 2011 fusion under a second compensable injury rule."

[¶26] Dr. Neal's opinion, standing alone, may have been sufficient to establish Ms. Newman's entitlement to compensation under the second compensable injury rule. In this case, though, Dr. Neal's opinion does not stand alone. As discussed above, Dr. Ruttle provided his contrary medical opinion that the herniation at the L4-5 level was caused by pre-existing degeneration, not by the previous surgery or the earlier work-related injury. As also discussed above, there is substantial evidence in the record supporting the hearing examiner's reliance on Dr. Ruttle's opinion.

[¶27] Ms. Newman contends that because Dr. Ruttle could not recite the second compensable injury rule, he could not possibly have offered an opinion as to whether Ms. Newman's L4-5 problem was a second compensable injury. Dr. Ruttle's deposition testimony confirms that he was not familiar with Wyoming's legal definition of a second compensable injury. However, the substance of his testimony was that the L4-5 problem was due to "degenerative changes . . . primarily genetic in nature." He specifically denied that the initial injury contributed in any material fashion to the development of the L4-5 condition. Although he could not recite the precise legal formula, the substance of his opinion is sufficient to support the hearing examiner's ruling that Ms. Newman had failed to establish a second compensable injury.

[¶28] Moreover, the relevant question on appeal is not whether Dr. Ruttle knew the second compensable injury rule, but whether the hearing examiner knew it and correctly applied it. She did. The order accurately recites the rule:

> 100. This case also concerns the second compensable injury rule. In *State ex rel. Wyo. Workers' Safety & Comp. Div. v. Kaczmarek*, 2009 WY 110, 215 P.3d 277, 281 the rule was stated as follows,
>
>> Wyoming law has long recognized that a single incident at work can give rise to more than one compensable injury. *See Baldwin v. Scullion*, 50 Wyo. 508, 62 P.2d 531, 539 (1936). This principle, referred to as the second compensable injury rule, applies when

"an initial compensable injury ripens into a condition requiring additional medical intervention." *Yenne-Tully v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 12 P.3d 170, 172 (Wyo. 2000). . . .

Whether a first injury predisposed an individual to a second injury may be a factor considered in determining whether a claimant has satisfied his burden of proof. *See Pino* [*v. State ex rel. Wyo. Worker's Safety & Comp. Div.*], 996 P.2d [679,] 686-87 [(Wyo. 2000)]. However, such a finding, without an ultimate conclusion that it is more probable than not that the second injury was causally related to the first, is inadequate. Also, to allow claimants to seek benefits for a second compensable injury requiring only that the claimant show that the first injury "contributed in some fashion" to the second is an unworkable standard that would open the door to tenuous, vague, and even contrived claims.

*Id.* at ¶ 9.

(Emphasis omitted.)

[¶29] Applying the second compensable injury rule to the facts, the hearing examiner stated that she "was not persuaded that there was a causal connection" between the incident Ms. Newman suffered at work and the subsequent injury at the L4-5 level. This represents a correct application of the second compensable injury rule, and as we have already discussed, there is substantial evidence to support the hearing examiner's decision. Ms. Newman has therefore failed to show that the decision was arbitrary, capricious, or not in accordance with law.

[¶30] Affirmed.